## Pattison's Appeal.

1. A contract for standing timber on a tract of land to be taken off at discretion as to time, is an interest in land, is within the Statute of Frauds, and its transmission must be in writing.

2. Growing crops, the product of agriculture, pass to the administrator, and are liable to be sold on execution as the personal chattels of a debtor.

3. With few if any exceptions, real interests seized in execution are to be sold and pass as real estate.

4. T. owning an interest in standing timber, assigned it to S. by writing absolute on the face, but with a parol agreement that it should be reassigned when S. should be repaid advances, &c. S. sold to H. without notice of the collateral agreement. *Held,* that H. took a full title.

March 10th 1869. Before THOMPSON, C. J., READ, AGNEW and WILLIAMS, JJ. SHARSWOOD, J., at Nisi Prius.

Appeal from the decree of the Court of Common Pleas of *Tioga county :* In Equity: No. 124, to July Term 1868.

On the 3d of January 1866, Charles Pattison filed a bill against C. C. B. Walker, Austin Lathrop, Jr., and Nelson Somers. The bill set out, that about the first of March 1850, Silas Billings contracted to sell and convey to Andrews & Langdon all the white and Norway pine and oak timber suitable for sawing and manufacturing into lumber, which was then standing, lying or being on a piece of land situate in the county of Tioga, Pennsylvania, which lies, &c., and extending to the state line between New York and Pennsylvania, containing between 4000 and 5000 acres: that Menzies, Viele & Mather by sundry conveyances became the owners of the title to two-thirds of the said timber, and in the month of June 1857 conveyed all their interest to William B. Middaugh: that shortly afterwards Middaugh transferred two-thirds of his interest to Pardon Damon and Thurman Pattison : that in the fall of 1858, Middaugh and Thurman Pattison assigned their interest in the timber to Nelson L. Somers as collateral security to indemnify Somers for advances made to them, Somers then agreeing to take from them manufactured lumber and run it to market, and after deducting expenses to account to them for the proceeds by applying them to the advances made by Somers, and to reassign his interest to them when a sufficient quantity of lumber had been delivered to him to pay advances, expenses, &c. : that Middaugh and T. Pattison delivered to Somers a sufficient quantity of lumber to repay him his advances, expenses, &c., and Somers refused to assign his interest in the timber to them: that Somers in fraud of his agreement had sold and transferred his interest to J. N. Hungerford, and that Hungerford had sold and transferred his interest to C. C. B. Walker and Austin Lathrop, Jr.: that Walker and Lathrop had cut and manufactured 1,000,000 feet or more of the said timber, and were still cutting and manu-

[Pattison's Appeal.]

facturing lumber from the same tract: that the plaintiff was owner of all T. Pattison's interest in the timber "by private sale and transfer" from him and by public sale by the sheriff on a writ of venditioni exponas on a judgment recovered against him in the Court of Common Pleas of Tioga county, of which the defendants had notice. The prayer was for an account against the defendants, that Walker and Lathrop be directed to pay what was due by them, that the defendants be restrained from cutting any more timber, that a commission may issue to divide and allot one-third of the timber to the plaintiff, that conveyances be executed, &c.

The defendants answered, admitting some of the allegations, denying knowledge of others, averring that the assignment to Somers was on its face absolute and without condition, and they had no knowledge whatever of the assignment being as collateral security, &c., the first intimation of such arrangement, for the delivery of lumber, &c., to Somers, &c., was by the bill: that Walker and Lathrop owned all the interest that Hungerford had in the timber.

Hungerford answered also separately, averring that he bought from Somers for a valuable consideration, without any knowledge of an agreement by Somers to reassign, or of any equities between him and Middaugh and T. Pattison, and that he was an innocent purchaser for value without notice.

Walker and Lathrop answered also separately that they purchased of Hungerford without knowledge, &c., and were innocent purchasers for value without notice.

A replication was filed.

The evidence showed the conveyances as set out in the bill. Also a levy by the sheriff, January 3d 1865, under a fieri facias against T. Pattison on "the equal undivided third of all the white and Norway pine and oak timber standing or lying on a tract of land known as the Billings tract," &c. Also a sale May 1st, under a venditioni exponas, "to C. L. Pattison, the equal undivided one-third interest in the timber lying and standing on the annexed described tract of land," &c. There was no deed from the sheriff. Also the following:

"For a valuable consideration, to me in hand paid, I hereby sell to C. L. Pattison all my right, title and interest to all the timber cut by Walker & Lathrop on the Billings land, situate in Tioga county; between Holden's brook and Troup's creek, and the State line and Cowanesque river.

                                             T. PATTISON.
"Lawrence, October 10th 1865."

There was quite conclusive evidence that the assignment to Somers was on the conditions set out in the bill, but no evidence

that either Hungerford, Walker or Lathrop had notice of the conditions of the conveyance to Somers.

T. Pattison testified, that all the advances, expenses, &c., of Somers had been more than paid by the delivery of lumber according to their agreement. There was on the part of the defendants much evidence that there was still a considerable balance due to Somers.

The Court of Common Pleas (Williams, J.), after a thorough examination of the authorities and discussion of the principles, concluded his opinion, saying:

" We hold therefore that the interest of the vendees of Billings was such an estate in land as could only pass by grant.

" That such a contract is within the recording acts, and that a purchaser buying without notice of an outstanding equity, would hold discharged of such equity.

" That the sale by the sheriff is governed by the same rules that control private parties, so that the sheriff must sell that which is real as real, and that which is personal as personal.

" And consequently that the sale of the estate of one of the holders of the contract of 1850 as a chattel, would not divest the rights of such holder."

The bill was dismissed without prejudice. The plaintiff appealed, and in several specifications assigned for error the decree of dismissal.

*W. H. Smith* and *C. H. Seymour*, for appellant.—If there was an intention of the owner of the land to detach the timber from it, it changed the nature of the property as between themselves: 1 Wms. on Ex. 268; Rogers *v.* Gilinger, 6 Casey 185; Brown on Frauds 262. This was a license to go on the land and take the timber: 3 Kent's Com. 453. Middaugh could not sell T. Pattison's interest in the joint property: Sloan *v.* Moore, 1 Wright 223; Story on Part., § 96, 101, 141, 163, 170.

*M. F. Elliott* and *F. C. Smith*, for appellees.—The sale by Billings was of an interest in the land: Caldwell *v.* Fulton, 7 Casey 483; Huff *v.* McCauley, 3 P. F. Smith 206. Verbal contracts for *fructus industriales*, products produced by periodical planting, are good: for *prima vestura*, growing trees, &c., they are not good: Brown on Frauds 225, 426. Where the owner passes the apparent right of property to the person from whom a bonâ fide vendor derives title, the title will pass: McMahon *v.* Sloan, 2 Jones 229; Calais Steamboat Co. *v.* Vankelt, 2 Black R. 372.

The opinion of the court was delivered, May 11th 1869, by

THOMPSON, C. J.—It would strike the unprofessional mind in

this state with scarcely less surprise than it would the professional, if it were announced that the growing timber on a man's land might be held by a contract in parol, against everybody, whilst the soil itself could only be legally transmitted by an instrument of writing; that what we have been accustomed to consider an integrant part of the freehold, the growing timber, might be sold and transmitted with no more solemnity than a pile of boards at a saw-mill, or bushels of wheat in a barn. If such should come to be the law, its practical operation would be, that one man might own all the timber on another man's land by a secret and unrecorded contract, while the title to the soil remained in the latter. Or A. might own the timber on Black Acre, and B. that on White Acre, and so on to the end of the chapter. If such interests might pass by parol, or word of mouth, and become mere chattel interests, they would in time be liable in the hands of owners, to seizure and sale by sheriffs and constables as personal chattels. From such a condition of things nothing but inextricable confusion could possibly follow. We regard a contract for the standing timber on a tract of land, to be taken off at discretion as to time, as an interest in land, and within the Statute of Frauds and Perjuries, the transmission of which must be by writing.

The distinction in the English books between the *prima vestura* and the *fructus industriales* of land, namely, the natural growths, and the products of agriculture, has always been regarded with us. We have uniformly held that growing crops pass to administrators and not to heirs, and that they are liable to be seized and sold on execution as personal chattels of a debtor. So in regard to the former, whenever we have spoken on the subject there is a concurrence likewise in the doctrine. In Yeakle *v.* Jacob, 9 Casey 376, this court held, that a grant to one of a perpetual right to enter and cut timber on another's land for the purpose of repairing fences, was within the Statute of Frauds and Perjuries; that such a right is an interest in land and cannot pass by parol. This case was cited and applied in Huff *v.* McCauley, 3 P. F. Smith 206. Many, if not all the authorities bearing on this question, may be found referred to in the arguments and opinions in these two cases, and I will not burden this opinion with them. We think the principle of them is indisputable. Nothing can be drawn from the case of Caldwell *v.* Fulton, 7 Casey 475, and subsequent cognate cases, in which this court has held to the right of severance of a freehold estate into one or more estates of freehold within the same boundaries, that is, the mineral under the surface, to constitute a separate estate from the surface land. The distinctiveness of the purposes and uses of these interests, renders the division natural and not productive of any confusion, and very important to both interests. But it was never held that either was a personal chattel, or to be so treated. Nor are we

for a moment to doubt, but a conveyance of all the timber on a man's land to be taken at discretion, is not an interest in land which may be conveyed by an instrument in .writing. That is not our question: it is whether such an interest is personalty or realty? and we unhesitatingly hold it to be the latter. It is a rule which admits of few, if any exceptions, that real interests seized in execution are to be sold and pass as real estate. Applying these principles to the case in hand, and regarding as we do, the interest acquired and held by Middaugh and Pattison in the timber on the land mentioned in the bill as an interest in the realty, the sale of Pattison's interest as a personal chattel, we hold did not pass the title: St. Bartholomew *v.* Wood, ante p. 96. The learned judge was altogether right in his ruling on this point.

But the plaintiff claims that the assignment to him by T. Pattison vested in him the right to call on the defendants, the vendees of Hungerford, who purchased from Nelson L. Somers, to account for profits accruing to his assignee under the terms of an alleged contract with Somers, to reconvey to him and Middaugh, on being paid advances, interest, &c., made by him to their benefit and use. That Somers has been paid has not been established by preponderating proof. Indeed, by any proof, for we think the assignor was not a competent witness for the assignee, on the principle of Post *v.* Avery, 5 W. & S. 509, and other cases. That, however, need not be regarded now. The testimony was heard and it was rebutted by countervailing proof, which left the case in equilibrio, if not against the plaintiff. But in view of another consideration this was of no consequence. It was neither charged nor proved by the plaintiff that Hungerford had notice of the secret agreement between Somers and Middaugh and Pattison, when he purchased of the former. Somers's title was indefeasible on its face, and without notice Hungerford took what it purported, a full title. This being so, Somers's conveyance passed every interest of Middaugh and Pattison to Hungerford, and of course, left Pattison to look to Somers for redress, and not to innocent purchasers. The fact that Hungerford afterwards took a conveyance also from Middaugh establishes nothing. It might have been for a good reason or a bad one; whether the one or the other, it establishes nothing of itself, and aids nothing in the proofs.

After a careful examination of all the grounds taken, we think the case was rightly determined by the learned judge below.

The decree is affirmed at the costs of the appellant and the appeal is dismissed.