Miller *versus* Zufall.

1. A contract for the sale of growing timber to be taken off by the pur-
   chaser, without specification as to time, is an interest in land, within
   the meaning of the Statute of Frauds.

2. To take the case of a parol sale of land out of the Statute of Frauds,
   the vendee must take actual, open, notorious, exclusive and continuous
   possession of the premises in pursuance of the contract, and where the
   whole purchase money has not been paid, he must have made such im-
   provements thereon as cannot reasonably be compensated in damages.

3. A., under an alleged parol contract for the sale of timber land, en-
   tered upon it, cut standing trees, peeled bark and removed the timber
   and bark therefrom, and to facilitate this, removed some rocks to make
   a passable road. He paid a small portion of the purchase money, less
   than the value of the timber and bark removed. *Held* that he did not
   take such possession or make such improvements as to take the sale out
   of the Statute of Frauds.

4. It is not necessary for the holder of an equitable estate in land, in
   an action of trespass against one for cutting and removing timber, to
   use the name of the holder of the legal title, but who had no posses-
   sion when the trespass was committed; for an equitable estate will sup-
   port an action of trespass.

February 12th, 1886.     Before MERCUR, C. J., GORDON,
PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Somerset county :*
Of January Term, 1886, No. 68.

This was an action in trespass *quare clausum fregit,* brought
by Jacob P. Miller against William H. Zufall for entering
upon a tract of land, cutting and removing timber.

The following are the facts of the case as they appeared on
the trial before BAER, P. J. :

Dr. C. J. Stutzman was the owner of a tract of unseated

land situate in Elk Lick and Greenville townships, Somerset county, containing 410 acres, commonly called the "Saddle Bags" tract. In 1882, Zufall, the defendant, was engaged in the lumber business, and had a portable steam saw mill on a tract of unseated land adjoining this tract belonging to Mrs. Catharine Miller. He testified that some time in April, 1882, he went to Stutzman with the intention of buying the timber on the west side of this tract, but that Stutzman wanted to sell the land, and wanted $1,000 for it. Zufall testified that he replied that he wanted to put his men to work peeling bark and hadn't time to run the lines, and also said, "I told him if he would let me go ahead and cut, that he could get the lines run, and if there was timber enough on the tract that I could make $1,000 out of it, I would take it at that," and he said, "All right, that's fair enough, you go ahead;" "I told him that if I didn't take the land at $1,000 I would pay him the same royalty I paid Mrs. Miller, that was before I began to cut." He then went to work on the west side of the tract, cut timber, peeled bark, made ties, and made such log roads as were necessary to haul the timber to his mill on the adjoining tract, belonging to Mrs. Miller, and kept an account showing the quantity of timber cut off the Stutzman tract, and how much royalty was due Dr. Stutzman. On the 16th February, 1883, Zufall gave Stutzman a check for $200. It was drawn in the ordinary form and did not express what it was given for.

Zufall testified that he told Stutzman at the time that the $200 was part of the purchase money. Stutzman testified that nothing was said at the time as to what the money was for, but he supposed it was a payment on account of royalty, that he so received and applied it. At the time this check was given there was $236.35 due Stutzman on royalty.

Zufall further testified that at the time he gave him the check, "I then told him I wanted him to run that line; I wanted to have that thing fixed up and the deed made;" he says, "I will do it as quick as I possibly can."

Zufall further testified, "On the 12th April, 1883, I went to his house and told him I had made up my mind to take it without having the lines run, and if I wanted to have the lines run I would have a surveyor and survey it myself, he should make the deed and he could get his money paid, some right down, and the balance in a short time;" the doctor said, "All right, go ahead and I will make the deed in a few days."

Zufall produced one witness who was present when he went to buy the timber, and made the alleged conditional purchase, and who was also present when he went to see Stutzman on the 12th of April, 1883, and told him he would take the land

without having the lines run, and also produced some testimony showing the declaration of Stutzman about the sale of the land on condition to Zufall. On the other hand, Stutzman denied that he had sold the land to Zufall, and claimed that he had only given him the privilege to cut some timber on the west side of the mountain during the bark peeling season, and that the $200 paid by Zufall was on royalty.

Zufall had some of the lines of this tract run on the 16th of May, 1883, and on the 25th day of October, 1883, tendered Stutzman the balance of the $1,000, but the latter declined to take it, saying it was too late, as he had sold the land to Miller.

On the 16th of May, 1883, Stutzman sold the land in dispute to Miller, the plaintiff, by an article of agreement for the sum of $1,000, payable as follows: $500 on the 27th of May, 1883, and $500 on the 1st day of April, 1884. The first payment was made when it became due and both testified that Miller was to have immediate possession.

On the 5th of June, 1883, Stutzman caused the following notice to be served on Zufall:

"SALISBURY, PA., June 4th, 1883.

" To WM. ZUFALL—*Sir :* Take notice that the tract of land known as the 'Saddle Bags' tract, has been sold by me to Jacob P. Miller, that you will be held as a trespasser if any more timber is cut by you on said tract after this date.

"C. G. STUTZMAN."

The deed was made by Stutzman to Miller on the 3d of April, 1884. After this notice was given, Zufall cut timber on the land, and on the 17th of November, 1883, this suit was brought. On the trial of the case Zufall set up the alleged parol contract for the purchase of the land and claimed that the plaintiff could not recover, as he (Zufall) was the owner. It was agreed that Zufall had cut timber on the land, after the notice and before this suit was brought, to the value of $100, and if the plaintiff was entitled to recover, the jury should return a verdict for that amount. On the evidence the Court directed the jury to find for the plaintiff. A motion for new trial was filed, which was subsequently granted on the ground that as the land was unseated, and as Miller had not taken actual possession, and as the legal title was in Stutzman at the time of the commencement of the suit, Miller could not maintain trespass. When the case came on for trial the second time, plaintiff moved to amend the record by adding the name of Stutzman as a plaintiff and thus make the case stand in the names of the owners of the legal and equitable titles,

which was refused by the Court. (Ninth assignment of error.)

The Court instructed the jury to render their verdict for the defendant, which they accordingly did. Judgment was rendered thereon, whereupon the plaintiff took this writ, assigning for error the refusal of the Court to allow him to amend, as above shown, and the instruction of the Court to the jury to render their verdict for the defendant.

*W. H. Koontz* (*H. S. Endsley* with him), for plaintiff in error.—It is not disputed that the gist of the action of trespass is the injury done to the possession, but it has always been held in this State that the owner of wild, uncultivated land is to be deemed in possession, so as to maintain trespass. The Court below held that this constructive possession was in Stutzman, but we respectfully submit that it was in Miller.

In Mathers *v.* The Ministers of Trinity Church, 3 S. & R., 514; Miller *v.* Shaw, 7 Id., 134; Porter *v.* McGinnis, 1 Barr, 416, it was held that "the owner of wild, uncultivated land is deemed to be in possession of it, so as to maintain trespass for an injury to the soil." In Clark *v.* Smith, 1 Casey, 139, the Court say, "when there is no actual possession in another, the owner is of course to be deemed in actual possession: Hole *v.* Rittenhouse, 1 Casey, 493; and in Young *v.* Herdic, 5 P. F. S., 173; Morris's Appeal, 14 Id., 282; Adams *v.* Cuddy, 13 Pick., 460; 25 Am. Dec., 330; McColman *v.* Wilkes, 51 Id., 637. The case of Brewer *v.* Fleming, 1 P. F. S., 102, rules this case.

In Schuylkill Nav. Co. *v.* Farr, 4 W. & S., 363, it was held that the owners of the legal and equitable estates may join in an action for damages done to the property. In Neiss *v.* Foster, 14 P. F. S., 495, which was trespass *quare clausum fregit*, the action was brought in the name of the holder of the legal title, for the use of the party to whom he sold, the trespass having been committed before the sale. This Court disregarded the use plaintiff and held that "it matters not to the defendant who gets the money, if there be a legal party entitled to recover it from him," and sustained the verdict in favor of the plaintiff. The motion to amend did not change the form or the cause of action, and under the statutes and rulings of this Court the amendment should have been allowed: Act 4th May, 1852, and 12th April, 1858, Purdon's Dig. vol. 1, p. 70; Kayler *v.* Shaffner, 24 Pa. St., 491; Druekenmiller *v.* Young, 27 Id., 98; Rangler *v.* Hummel, 37 Id., 132; Hite *v.* Kier, 38 Id., 72; Moffit's Adm'r *v.* Rynod, 69 Id., 388; Leonard and wife *v.* Parker *et al.*, 72 Id., 238; Fidler *v.* Hershey, 90 Id., 111; Clement *v.* Commonwealth, 95 Id., 111; Patton

[Miller *v.* Zufall.]

*v.* P. & C. R. R. Co., 96 Id., 173; Balton *v.* King, 14 W. N. C., 361.

"To take a parol sale out of the operation of the Statute of Frauds, the vendee must take actual, open, notorious and exclusive possession of the premises in pursuance of the contract, and make such improvements thereon as cannot be compensated in damages:" Detrick *v.* Sharrar, 95 Pa. St., 521; Bowers *v.* Bowers, Id., 477.

"The rule is well settled that to take a parol contract for the sale of land out of the operation of the Statute of Frauds and Perjuries, the contract must be distinctly proved; the land must be clearly designated, and open, notorious and exclusive possession must be taken and maintained under and in pursuance of the contract:" Overmeyer and wife *v.* Koerner, 2 W. N. C., 6; Lund *v.* Brown, 14 Id., 489.

"A contract for the standing timber on a tract of land, to be taken off at the discretion of the purchaser as to time, is an interest in land, within the meaning of the Statute of Frauds, the transmission of which must be in writing:" Pattison's Appeal, 11 P. F. S., 294; Bowers *v.* Bowers, 14 Norris, 477.

Testing this alleged contract by these well settled rules, we respectfully submit that it lacks every essential requirement to take it out of the Statute of Frauds.

1. The evidence of the contract is not of that definite and unequivocal character as is required in such cases.

2. There was no such possession taken as is required to take a case out of the Statute: Hole *v.* Rittenhouse, 1 Casey, 191; Brewer *et al. v.* Fleming, 1 P. F. S., 102; Detrick *v.* Sharrar, 95 Pa. St., 521.

3. There was no payment of the purchase money. Zufall says he paid $200 in February, 1883, on the land, by check; but Stutzman says it was on royalty, and there was more than that amount due Stutzman at that time, on the basis of royalty.

4. There were no improvements made by Zufall. He simply cut such log roads as were necessary to haul the logs off the land.

To enforce such a contract would be to annul the Statute of Frauds and reverse the rulings of this Court for nearly a century. It would be an invitation to perjury, and make the titles to land as uncertain as the shifting sands of the desert.

*Coffroth & Ruppell*, for defendant in error.—The gist of an action of trespass is an injury to the possession; want of possession in the plaintiff will defeat his right of recovery in an action of trespass, no matter how meritorious his claim for

damages; if a parol contract for the sale of land be within the Statute of Frauds and Perjuries, then the vendee is a tenant at will, and an action of trespass for cutting timber on this land cannot be maintained against him: Greber v. Kleckner, 2 Barr, 289; Clark v. Smith, 1 Casey, 137; Mathers v. Trinity Church, 3 S. & R.. 509.

Counsel for the plaintiff in error insist that the parol contract set up by Zufall is within the operation of the Statute of Frauds, and this view was held by the Court below. In our opinion the Court was in error in this particular. We think the case is clearly within the well known exception recognized by this court, and so frequently declared as to have become as firmly imbedded in our jurisprudence as is the Statute itself.

The evidence as to the terms of the contract is full, complete, satisfactory and indubitable; it is definite and unequivocal. The boundaries of the land were fixed. The amount of consideration was fixed. Part of the consideration was paid, and the balance was tendered before the suit was brought. Zufall made improvements. He had actual, open, notorious and exclusive possession of the land under the contract ever since the contract was made, and has used the land as his own. Zufall was not in possession as a mere intruder or tortfeasor, but the possession he had was by virtue of a contract with the owner of the land, and under the facts in this case the rule of *pedis possessio* does not obtain. Under all the evidence we think it clear that the learned judge erred in deciding as a matter of law that there was no actual possession: Bassler v. Wesley, 2 S. & R., 352; Stewart v. Stewart, 3 Watts, 255; Billington v. Welsh, 5 Binn., 131; Pugh v. Good, 3 W. & S., 61; Jamison v. Dimock, 14 Norris, 52; Bowers v. Bowers, Id., 480.

The motion was virtually introducing a new cause of action, and the court should take " care that the amendment be not used for the purpose of introducing a cause of action substantially different from that on which the suit was actually, although informally brought:" Kaylor v. Shaffner, 12 Harris, 491. "An amendment is not always a matter of absolute right, it will not be allowed with a view to give the party in default any unfair advantage; the purpose of the law is, that the cause may be 'tried on the merits:'" Rehfuss v. Gross, 16 W. N. C., 375.

Mr. Chief Justice MERCUR delivered the opinion of the Court, October 4th, 1886.

This was an action of trespass to recover damages for the cutting of timber by the defendant on a tract of unseated

[Miller *v.* Zufall.]

land. which the plaintiff by agreement in writing purchased of Dr. Stutzman on the 16th May, 1883. On the trial it was agreed that the defendant had cut timber on the land to the value of $100, between the day of the written agreement and the commencement of this suit, and if. the plaintiff was entitled to a verdict it should be for one hundred dollars.

Dr. Stutzman held the undoubted legal title to the land, when by agreement under seal he sold the same to the plaintiff, in consideration of $1,000, and taxes for the current year, to be paid therefor, five hundred dollars thereof on the 27th of the same month, and the residue with interest on the first of April following, the deed to be made at the earliest convenience.

On the 22d May the plaintiff paid the first five hundred dollars. In March he paid the taxes for the years 1882 and 1883, and on the 3d of April following Stutzman executed and delivered to him. a deed for the tract of land.

The defendant set up two grounds of defence. One a parol agreement with Stutzman for the purchase of the land, made prior to his sale to the plaintiff; the other that the plaintiff had no sufficient possession to enable him to maintain the action.

1. When an attempt is made to establish title to land under a parol contract, proof thereof in all its essentials, and in all its equities, should be so plain and clear as to preclude doubt or hesitation as to the contract and the equities arising thereunder: Moore *v.* Small, 19 Pa. St., 461; Bowers *v.* Bowers, 95 Id., 477. More especially is this proof necessary when the part performance can readily be compensated in damages: McKowen *v.* McDonald. 43 Id., 441; Ackerman *v.* Fisher, 57 Id., 457; Moyer's Appeal, 105 Id., 432; Lord's Appeal, Id., 451.

A contract for the sale of growing timber to be taken off by the purchaser without specification as to time, is an interest in land within the meaning of the Statute of Frauds, and the transmission of which must be in writing: Pattison's Appeal, 61 Id., 294; Bowers *v.* Bowers, *supra.*

It is well settled, to take the case of a parol sale of land out of the Statute of Frauds, the vendee must also take actual, open, notorious, exclusive and continuous possession of the premises in pursuance of the contract, and when the whole purchase money has not been paid, he must have made such improvements thereon as cannot reasonably be compensated in damages: Hart *v.* Carroll, 85 Pa. St., 508; Ballard *v.* Ward, 89 Id., 358; Ditrick *v.* Sharrer, 95 Id., 521.

An examination of the evidence in this case shows it to be lacking in all the essential particulars necessary to take the

case out of the statute. Great doubt exists as to there having been any specific and mutual contract between Stutzman and the defendant for the sale and purchase of the land, or whether there was a mere permission to cut an uncertain quantity of timber thereon, and negotiations in regard to some sale of the land at some future time. The evidence of the parties to that alleged contract is in direct conflict. Stutzman testifies positively there was no mutual agreement between him and Zufall for the sale of the land.

However that fact may be, there is no doubt that the defendant paid a small portion only of the sum which he alleges he was to pay for the land, and that he did not take that open, notorious and exclusive possession thereof necessary to give him title thereto. His work thereon consisted in cutting standing trees, peeling bark, and in removing the timber and bark therefrom. To facilitate this work he removed some rocks to make a passable road. This was the extent of his improvement on the land. He did not clear or cultivate a rod of land, nor did he erect any building thereon. The evidence is clear and uncontradicted that the lumber which the defendant removed and appropriated to his own use, before the plaintiff purchased, was of greater value than the $200, which he paid Stutzman.

We therefore concur with the learned judge in that portion of his charge to the jury in which he said, "The defendant had no actual possession by residence, enclosure, cultivation or improvements, but he had gone on it from time to time, with employés, laborers and teams, cut timber and peeled bark, which he hauled away and sold. His possession was such, and no other, as a mere intruder might have had, the log-ways were merely such as sufficed for removing the timber and bark that were taken." He was further correct in saying the defendant had not been injured by non-performance of the contract, as he had realized more from the product of timber and bark sold than the sum of money which he had paid.

A few days after the purchase by the plaintiff, Zufall was notified thereof, and that he would be held as a trespasser in case he cut any more timber on the tract. He disregarded the notice. The Court correctly refused to sustain the first ground of defence.

2. The learned judge, thinking the other ground of defence well taken, gave binding instructions to the jury to find for the defendant.

Having determined that the defendant was a mere intruder, without possession or right of possession, and his license to cut timber having been revoked, the other question is, had the plaintiff a title and possession sufficient to enable him to

maintain this action against a trespasser? Of this we have no doubt. It is well settled law that the owner of wild and uncultivated land is to be deemed in possession so as to maintain trespass, until an adverse possession is clearly made out: Matthew *v.* Trinity Church, 3 S. & R., 513; Ward *v.* Taylor, 1 Pa. St., 238; Baker *v.* King, 18 Id., 138.

The owner of the legal title had sold the land by agreement in writing, to the plaintiff. The title of the latter was therefore not affected by the Statute of Frauds. Both parties to this written agreement testified that when it was executed, the agreement was that the plaintiff should have immediate possession of the land. It was a well known and designated tract. The vendor did all that was necessary to give the vendee possession thereof. The latter accepted the same. No adverse possession intervened. In a few days he paid one-half of the purchase money, before the same became due. Thenceforth Stutzman held the legal title as trustee for the vendee, who became the equitable owner of the estate charged and incumbered only by the purchase money unpaid: Morris *v.* Rice, 7 Watts, 437; Steven's Appeal, 8 W. & S., 186; Robb *v.* Mann, 12 Pa. St., 300; Kerchall *v.* Day, 14 Id., 112; Morgan *v.* Scott, 26 Id., 51; Siter, James & Co.'s Appeal, Id., 178.

If the land increased in value it was the gain of the vendee. If it decreased by the destruction of timber or improvements thereon, it was his loss: Morgan *v.* Scott, 26 Id., 51. He had an indubitable right of possession, and in contemplation of law was in the actual possession. This gave him a right to maintain trespass for injury done thereon. It lies not in the mouth of a trespasser to defend by reason of the plaintiff owning only an equitable estate: McCurdy *v.* Potts *et al.*, 2 Dallas, 98. His equitable title was sufficient to maintain the action against a wrong doer. It was held in Bechtel *v.* Rhoads, 3 S. & R., 333, that a descriptive warrant, on which a survey and patent were afterwards duly obtained, vested the possession of vacant land in the owner of the warrant, so that on obtaining his patent he might maintain trespass for acts done on the land after the date of the warrant and before the patent.

A warrant for unimproved land gives to the owner of it a constructive possession of the land, which will enable him to maintain trespass for digging ore thereon, against one who has not an actual adverse possession of the land: Baker *v.* King, 18 Pa. St., 138.

When the defendant cut the timber in question, the plaintiff by the terms of his contract had an equitable title which soon ripened into a legal estate. It was not necessary for him to use the name of one who held the legal title, but who had no possession, when the trespasses were committed. The

vendee could assert his right to the timber and to the land in his own name. The amendment asked for and refused was therefore unnecessary. An equitable estate will support an action of partition: Willing *v.* Brown, 7 S. & R., 467; Longwell *v.* Bentley, 28 Pa. St., 99. So it will of trespass: Brewer *v.* Fleming, 51 Pa. St., 102.

It follows that the plaintiff had such a possession as to enable him to maintain this action, and the learned judge erred in holding otherwise. Therefore, under the agreement

> Judgment is reversed, and judgment is hereby entered in favor of the plaintiff for one hundred dollars, with interest thereon from the 6th of October, 1885, and costs.