## The First National Bank of Everett v. Morris et al.

*Hicks & Owens*, for plaintiff; *John Woodcock*, for defendants.

PATTERSON, P. J., July 26, 1928.—This is an action in trespass by The First National Bank of Everett, Pennsylvania, *v.* Aaron Morris et al., defendants, to recover damages for the cutting and removing of standing timber on a tract of land situate in Huston Township, Blair County, the title to which is claimed by both the plaintiff and the defendants. The defendants filed an affidavit of defense in the nature of a statutory demurrer, in which it is averred that the plaintiff's title is null and void and that the defendants' title is valid.

By an article of agreement dated June 20, 1925, A. J. Detwiler and wife sold to the Fry Lumber Company certain standing timber in the following language: "Do hereby sell, grant and convey to the grantee all the timber standing, down, manufactured into lumber products or otherwise on the following described tract of land situate in Huston Township, Blair County, Pennsylvania," and further providing "grantee to have three years in which to remove said timber, etc., from said premises, using due diligence to remove the same in said three years and in case of depression in business or panic or labor shortage, two years' additional time will be given to remove the same, which includes all timber as above set forth, regardless of size, and all manufactured products and structures on said premises." On the same day, the said Fry Lumber Company, by H. J. Fry, manager, by contract in writing, conveyed to The First National Bank of Everett, Bedford County, plaintiff in the present action, all of said timber in the following language: "Party of the first part agrees to convey and by these presents does convey to party of the second part, all their right, title and interest to the timber in a certain tract of land, etc.," and providing, further, "all the privileges for operation, rights-of-way and right of mill sets and water are included in this conveyance and party of the second part shall enjoy all the rights and privileges that were conveyed to party of the first part by A. J. Detwiler and Cenora B. Detwiler, his wife, under their agreement made the 20th day of June, 1925."

It is to be noted that the Fry Lumber Company was the fictitious business name for Charlotte Fry, intermarried with one Harry J. Fry, who executed the agreement above mentioned as her duly authorized agent, signing the same "Fry Lumber Co., H. J. Fry, Mgr.," and that the said H. J. Fry did not join as husband in the execution of said conveyance. On July 15, 1927, the said Charlotte Fry, individually, and trading as the Fry Lumber Company, was duly adjudicated a bankrupt by the District Court of the United States for the Western District of Pennsylvania, and thereafter her trustee in bankruptcy sold at public sale and conveyed the hereinbefore mentioned timber tract to the Morris Lumber Company, defendant in the present action. We have, therefore, under consideration two sales of the timber in question— one by the Fry Lumber Company to The First National Bank of Everett, dated June 20, 1925, and at a later date a second sale of the same tract by trustee of the Fry Lumber Company in bankruptcy to Aaron Morris et al., doing business under the firm name of Morris Lumber Company.

It is contended on the part of The First National Bank of Everett that the conveyance of the timber to said bank constituted a sale of personal property and the conveyance therefor, not being for real estate, did not require the joinder of the husband of the said Charlotte Fry. And on the other hand, the Morris Lumber Company contends that the sale to The First National Bank was null and void, for the reason that the husband, H. J. Fry, did not join in the execution of the conveyance, and that the second conveyance by the trustee in bankruptcy is good and valid under the law.

It is a well-established rule of law in Pennsylvania and many other states that a sale of standing timber under a written contract which provides for a limited time in which said timber is to be removed shall be considered personal property, and where it is provided that the timber shall be removed at the discretion of the purchaser without limit of time, the same is real estate.

The sale to The First National Bank of Everett, with the stipulation that the said timber shall be removed within three years, constitutes the transaction as a sale of personal property and not real estate, and such contract is

binding upon the party of the first part, Charlotte Fry, a married woman, without the joinder of her husband.

The Supreme Court, in McClintock's Appeal, 71 Pa. 365, decided in 1872, held:

"In agreements for the reservation or sale of growing timber, whether the timber is to be regarded as personal property or an interest in real estate depends upon the nature of the contract and the interest of the parties.

"If the agreement does not contemplate the immediate severance of the timber, it is a contract for the sale or reservation of an interest in land, and until actual severance the timber in such case passes to the heir and not to the personal representative. But when the agreement is made with a view to the immediate severance of the timber from the soil, it is regarded as personal property and passes to the executor and administrator and not to the heir."

And in Robbins v. Farwell, 193 Pa. 37, opinion dated 1899, and construing similar agreements for the sale of timber dated in 1885, 1888 and in 1891, the Supreme Court says: "He did not pretend to have purchased the land; he did aver and prove that he had purchased the timber with a view to immediate severance, and commenced to cut and remove it. . . . We held, in Pattison's Appeal, 61 Pa. 294, as follows: 'We regard a contract for standing timber on a tract of land, to be taken off at discretion as to time, as an interest in land and within the statute of frauds and perjuries. But then, in McClintock's Appeal, 71 Pa. 365, the distinction between a contract to take off the timber at discretion and one contemplating an immediate severance is . . . pointed out.'" And, further, on page 45: "In this contract it was intended by both parties that the timber should be immediately cut and removed; it was so cut and removed, and plaintiff, as to a considerable part, received his share of the proceeds; this was not a mere license to cut, revocable at pleasure of the grantor; it was the irrevocable sale of a chattel, in part delivered and in part actually paid for."

It is forcibly argued on the part of the defendants that, prior to the passage of the Act of May 22, 1895, P. L. 113, the above-stated rule as laid down in McClintock's Appeal, supra, and many other cases, determined what sales of standing timber were personal property and what were sales of an interest in land, governed by the statute of frauds and perjuries, as well as the married woman's act requiring the joinder of the husband in conveyances of real estate.

The Act of May 22, 1895, § 1, P. L. 113, reads as follows: "That it shall be lawful for the owner or owners of land, timber or bark, or for any person or persons having an interest therein, to grant, bargain and sell, or contract to sell, by deed, conveyance or contract in writing, signed by the grantor or grantors therein, and proved or acknowledged by them, as now required by law of this Commonwealth for the signing and acknowledging of deeds, all or any right, title, claim or interest such grantor or grantors may have in or to any standing or growing timber, or the bark thereon, upon any lands in this Commonwealth; and any such deed, conveyance or contract shall be taken and deemed as a deed, conveyance or contract conveying and vesting an interest in land."

The part of said section which reads "and any such deed, conveyance or contract shall be taken and deemed as a deed, conveyance or contract conveying and vesting an interest in land," taken by itself, is probably misleading. However, read in connection with the other sections of said act, it will be understood to be a part of a recording act and was enacted by the legislature for the protection of purchasers of land against unrecorded con-

tracts for sale of standing timber. It requires the recording of all such contracts the same as if they were conveyances of an interest in land. Said act is indexed in the pamphlet laws for the year 1895 as follows: "Recording of deed, conveyance or contract for sale of timber or bark, provided for . . . page 113."

It was evidently not the intention of the legislature to change the long-established rule in Pennsylvania which determined whether or not timber sales involved personal property or real estate. This conclusion is supported by a number of decisions of the appellate and other courts since the passage of the Act of 1895.

In the case of Mahan v. Clark, 219 Pa. 229, opinion by Mr. Justice Elkin, dated Jan. 6, 1908, it is held: "It has been uniformly held in this State that standing timber is real estate and that a conveyance thereof which does not contemplate an immediate severance is within the statute of frauds: Yeakle v. Jacob, 33 Pa. 376; Neumoyer v. Andreas, 57 Pa. 446; Pattison's Appeal, 61 Pa. 294; Bowers v. Bowers, 95 Pa. 477; Miller v. Zufall, 113 Pa. 317."

And in Bennett v. Vinton Lumber Co., 28 Pa. Superior Ct. 495, opinion by Judge Orlady, July 13, 1905, wherein the Act of 1895 is referred to in the following language (page 500): "The contract by which Bennett sold to Barker Brothers and Barker Brothers to the defendant company the hemlock timber standing and lying on the land described, under the Act of May 22, 1895, P. L. 113, is to be taken and deemed a deed, conveyance or contract conveying and vesting an interest in land. The only question for our decision is the character of the estate created by the writing."

And later, in the same opinion, it is said: "In White v. Foster, 102 Mass. 375, the court said: 'An estate acquired by the grantee of standing timber, to be removed within three years, may be regarded either as giving full title to the trees, defeasible by failure to cut and remove the same within three years, together with such interest in the grantee's other lands, by way of easement or incorporeal right, as is necessary to the enjoyment of the estate granted or as giving to the purchaser a leasehold in the premises for three years, with the right of appropriation to be exercised during the term; and that, in either aspect, there is a good defense against a subsequent purchaser of the land, without notice of the previous purchase of the trees, even although the deed was not regularly recorded.' " Citing again the rule laid down in Pattison's Appeal, supra, and McClintock's Appeal, supra.

In Wilmore Coal Co. v. Holsopple, 68 Pa. Superior Ct. 290, opinion by Judge Trexler, July 13, 1917: "It has been held in a number of cases that a conveyance of timber that does not contemplate an immediate severance is within the statute of frauds;" citing Yeakle v. Jacobs, supra; Pattison's Appeal, supra, and several other cases.

The Supreme Court, in Strause v. Berger, 220 Pa. 367, opinion March 2, 1908, held: "The timber is to be regarded as personal property and not as an interest in land because of the intention of the parties to the agreement that the cutting of it should commence at once and be completed within a reasonable length of time;" again citing McClintock's Appeal, supra; Robbins v. Farwell, supra, and concluding: "But that where the agreement is made with a view to an immediate severance, the timber is to be regarded as personal property."

In Edgcomb v. Clough, 275 Pa. 90, opinion by Mr. Justice Schaffer, the Supreme Court, on June 24, 1922, cites Pattison's Appeal, supra; McClintock's Appeal, supra, and Mahan v. Clark, supra. In Vogelbacher v. Walker, 7 D. & C. 661, opinion by Judge Searle, July 18, 1925, it is held that where

4

standing timber is sold subject to removal within a term of ten years, such timber is personal property; citing the cases hereinbefore referred to.

In Searle *v.* Aylesworth et al., 5 D. & C. 691, opinion by Judge Maxey, July 12, 1924, the Act of 1895 is quoted and fully discussed, and the rule as to personal and real estate in standing timber, as laid down in McClintock's Appeal, *supra,* and other authorities hereinbefore referred to, is again held to be the law.

*Decree.*

Now, July 26, 1928, the demurrer is overruled and defendants given fifteen days in which to file a further affidavit of defense if they so desire.

From Robt. W. Smith, Hollidaysburg, Pa.