## Copenhaver v. Markle-Bullers Coal Co., Inc.

410

*Nicholas Lorenzo*, for plaintiff.
*David C. Suckling*, for defendant.

HOUSE, *P.J.*, March 30, 1980—The parties to this action seem to have agreed that no issues of fact exist on the question of liability and therefore both have requested summary judgment. The pleadings show that this action was brought by plaintiff to recover damages for an alleged trespass to 50 acres of coal land in Redbank Township, Armstrong County, Pa., to which she claims title.

The coal lands claimed by plaintiff are part of an 80 acre coal tract that was leased to United Industries, Inc. by Harry Wayne Reddinger and Gladys Reddinger by agreement dated June 2, 1969. By agreement of March 1, 1970, United sublet the land for mining to defendant Markle-Bullers Coal Company. Markle-Bullers conducted surface mining operations on the land from April 1970 until March 1971. By agreement dated July 1, 1971, the sublease was canceled. By agreement of June 27, 1972, United again sublet the coal to Colwell Coal Company and Colwell in turn sublet to Markle-Bullers by agreement of September 20, 1972. Markle-Bullers again surface mined the coal in October, 1972, although it asserts that none of the 50 acres

claimed by plaintiff was involved in this later operation. (Any factual dispute concerning whether plaintiff's 50 acres were involved in the second round of mining would go to the issue of damages, since the trespass, if one occurred at all, would already have occurred by reason of the previous surface mining by defendant.)

Plaintiff claims title adverse to that of the Reddingers, asserting she owns the coal in 50 of the 80 acres. Her claim to this coal is complex and is the source of the legal problems in this case. Plaintiff traces her title to a source common with that of defendant's lessor, namely a deed from Michael Hollenbaugh to Emanuel Rettinger, Jr. dated April 1, 1876. Harry Wayne Reddinger's title to the surface and assertion of title to the coal is through two more recorded conveyances and their validity, as well as the validity of his surface title, are not in question.

Plaintiff claims under the same 1876 deed as well as a recorded deed of February 4, 1918, from Emanuel Rettinger to James Corbett conveying 50 acres of coal that were allegedly part of the tract conveyed from Michael Hollenbaugh to Emanuel Rettinger. Three more recorded instruments left a two-thirds interest in this coal in the Mill Coal Company and a one-third interest in R. T. McFarlane. This is how the title stood as of 1927, when it was apparently known as the McFarlane and Corbett coal property. (Members of the Corbett family, apparently heirs of James Corbett mentioned above, were the grantors to the Mill Coal Company.)

On March 2, 1931, a notation was made in the Treasurer's docket of Armstrong County of a treasurer's sale in the names of McFarlane and Corbett to the county of 50 acres of coal land in Redbank

Township. At that time no deed or deed poll was recorded for this sale. However, on April 1, 1941, the treasurer issued a deed poll for the same land to Armstrong County and this was recorded. On April 5, 1943, a deed poll was given by Armstrong County to Rose and Philip Mervis, and later recorded. On February 9, 1954, a notation was made in the treasurer's docket of a treasurer's sale to Armstrong County of 50 acres of coal in Redbank Township in the name of Philip Mervis. Neither a deed nor deed poll was recorded for this sale.

On November 14, 1956, the Armstrong County Tax Claim Bureau held a public sale of this land and a return of sale was confirmed by the court on March 5, 1957. The return of sale included 50 acres of coal in Redbank Township assessed to Philip Mervis and sold to W. A. Copenhaver. No mention was made of a deed and perhaps none issued.

W. A. Copenhaver died intestate on March 18, 1970, and by deed of August 15, 1970, his heirs conveyed to plaintiff. On petition of plaintiff, this court, on April 25, 1973, ordered the tax claim bureau to issue a deed to W. A. Copenhaver for 50 acres of coal land backdated to March of 1957. Defendant in the case at bar was not named as a respondent in the 1973 action.

One question presented in this case is whether plaintiff or W. A. Copenhaver had such title to this property at the time of the mining of coal by defendant that would entitle either of them to damages in trespass. Defendant argues that neither held such title and supports that argument with several reasons. Defendant contends that plaintiff's claim must rest on the title of W. A. Copenhaver and that he did not have title since he did not have a deed from the tax claim bureau. Defendant also con-

tends the tax claim bureau did not have a title to sell to W. A. Copenhaver since the deed records show title in Rose and Philip Mervis and no conveyance out of them is indexed. The notation in the treasurer's docket of February 9, 1954, defendant argues, does not convey title.

Defendant next argues that since the court record of the 1973 petition of plaintiff to have the tax claim bureau issue a backdated deed to W. A. Copenhaver shows that he paid only $5.71 of the full purchase price of $41, any equitable title arguably held by W. A. Copenhaver was insufficient to support a trespass action and that equitable title alone will not support such an action. Defendant also looks to the record ownership of the land and notes that it is shared by R. T. McFarlane and the Mill Coal Company subject to an adverse claim by Philip and Rose Mervis. Also defendant contends that even if W. A. Copenhaver did have such title as would support a trespass action, such action would be strictly personal to him and would not pass to plaintiff by a deed of conveyance absent a specific assignment of the cause of action.

This last argument is based on plaintiff's recording of her deed on April 16, 1971, one month after defendant concluded operations on the land in March 1971. However, the deed conveying the land to plaintiff was executed on August 15, 1970, approximately eight months before cessation of mining operations. The fact that the deed was not recorded until after cessation of operations would have no bearing on plaintiff's right to her own cause of action. The key date is the date of execution and delivery of the deed which was while the mining was in progress. Since defendant is not among those protected by the statute regarding tardy rec-

ordation of deeds, it cannot question the validity of the deed. Title, if any, was conveyed to plaintiff on the date of execution and delivery of the deed. Recordation does not convey title. Failure to record simply estops the title holder from asserting title in some situations. See Ladner on Conveyancing in Pennsylvania §§11:04-11:05 (3d ed. 1961). See also P. Nicholson Wood, Deeds of Conveyances in Pennsylvania, 21 P.S., pp. 37-39. As purported owner of the coal at the time of trespass, plaintiff may bring this action in her own right provided she had title at that time.

A similar analysis may be made of defendant's claim that the title of one or more of plaintiff's predecessors in title is invalid because no deed or memorandum was ever recorded. ". . . [T]he failure to record a deed does not make it totally void, but void only as to the parties mentioned in the statutes . . . Recording is not essential to the passage of title." Ladner on Conveyancing in Pennsylvania §11:04 (3d ed. 1961); Malamed v. Sedelsky, 367 Pa. 353, 80 A. 2d 853 (1951). The Pennsylvania recording statute of May 12, 1925, P.L. 613, as amended, 21 P.S. §351 et seq., primarily protects the grantee from subsequent sales by his grantor of the same land by allowing the grantee to record his title, thus giving public notice of his title and defeating the claim of any subsequent grantee. Secondarily, if the grantee fails to record his title, any subsequent bona fide purchaser, judgment creditor or mortgagee who takes from the same grantor without notice of the prior claim receives protection of his recorded title.

Here, defendant does not fall into any of these categories. Defendant did not purchase its rights from Rose and Philip Mervis, who it claims are

record owners of the coal rights. The situation of one who asserts title from another grantor or chain of grantors than did another claimant to the land is not covered by the recording statute. In this aspect, therefore, the recording statute provides no relief to defendant.

The bulk of the remainder of defendant's arguments consist of challenges to the validity of the titles of certain of plaintiff's predecessors in title. Specifically, defendant argues that W. A. Copenhaver never received a deed from the tax claim bureau in 1957, and that the notation in the treasurer's docket made on February 9, 1954, of the Treasurer's sale of the land in the name of Philip Mervis to Armstrong County failed to pass title to the county since apparently no deed was executed and delivered to the county.

As to the argument that W. A. Copenhaver never received a deed from the tax claim bureau for the sale in 1957, the attorneys for both sides have in several briefs debated the applicability of the various sections of the Real Estate Tax Sale Law of July 7, 1947, P.L. 1368, as amended, 72 P.S. §5860.101-5860.803. Plaintiff argues that Article VI of the act applies and that under that act's provisions no deed is required to pass title. Defendant contends Article VII applies, that a deed is required and further that a deed is also required under Article VI.

Neither party seems to have correctly stated the scheme of Articles VI and VII of the act. Article VI provides for the sale of property for delinquent taxes by establishing procedures under which the tax claim bureau must act. Sections 601 to 609 set the procedures for public sales and sections 613 to 615 provide for alternative private sales should the

highest bid at public sale fail to meet the upset price. Article VII provides that where land is acquired by a taxing district, its trustee or county commissioners (prior to establishment by the county of a tax claim bureau, as was the case here), the land so acquired may be turned over to the bureau for sale. The bureau, acting as trustee, then has the option, among others, of selling the property at private sale. (See §702 of the act, 72 P.S. §5860.702, which sale must be in accordance with sections 613, 614 and 615 of the act. If the land is not sold by private sale, section 703 provides that it may be sold at public sale without an upset price under the procedures of Article VI.)

Here, the land was sold under section 703 at a public sale without an upset price: In re Sale of Properties by Armstrong County Tax Claim Bureau for Unpaid Tax Claims, No. 135, March term 1957 (Armstrong County). The applicable portions of sections 703 and 608 contain an apparent contradiction as to whether or not a deed is required to pass title. The defendant cites that portion of section 703(a) reading: "The purchaser of any such property shall be given a *deed,* executed and acknowledged as hereinbefore provided, *which shall convey title free,* clear and discharged of all tax claims and tax judgments. . . ." (Emphasis supplied.) But that section also provides that the sale is to proceed according to the dictates in Article VI: 72 P.S. §5860.703(a).

The contradictory portion of Article VI is section 607 which states that after a public sale, the bureau must make return to the county's court of common pleas which, if all appears in order, shall confirm the sale nisi. Sixty days are then allowed for exceptions to be filed. If no exceptions are filed, or if they

are filed and overruled, absolute confirmation of the sale must be made. Subsection (g) provides that there "shall be no period of redemption after such sale and the *sale shall be deemed to pass a good and valid title* to the purchaser, free from any liens or encumbrances whatsoever, except such liens as are hereafter specifically saved, and in all respects as valid and effective as if acquired by a sheriff's deed." 72 P.S. §5860.607(g). (Emphasis supplied.) Section 608, entitled "Deed," places the duty on the bureau to make a deed to the purchaser and that it shall be recorded before delivery to the purchaser.

Reasonable arguments can be made interpreting these sections as both requiring a deed to pass title and not so requiring. Section 703 apparently requires a deed, "which shall convey title" yet refers back to Article VI, which in section 607 apparently requires an absolute confirmation of the sale which "shall be deemed to pass a good and valid title."

This court is not convinced that either argument is correct. Both of the above quoted passages concerning title contain further descriptions of the types of liens, claims, judgments, etc., which shall be discharged by sale. An examination of the act reveals that the type of liens, claims, judgments, etc., discharged depends on the type of sale and that this description of the quality of title to be taken is the sole purpose of the language used. This was not an attempt to explain whether the title passed by deed or by the sale itself. Although the language is not carefully drawn and is susceptible to the above arguments, we are convinced that this was not an attempt by the legislature to change the normal procedure of title passage. This procedure, explained by the court in Wilkes-Barre v. Luzerne County Tax Claim Bureau, 4 D. & C. 2d 399, 402

(1955), is that prior to confirmation the bidder is "in effect a mere preferred proposer," after confirmation he "becomes a purchaser and is thereafter regarded as an *equitable owner* of the property." (Emphasis supplied.) The execution and delivery of a deed being necessary to convey legal title (see Ladner on Conveyancing in Pennsylvania §§1:01, 6:27 and 11:04 (3d ed. 1961)) W. A. Copenhaver purchased and received only an equitable title to the coal.

Alternatively, the tax claim bureau itself may have held only equitable title and thus could sell no more. No deed conveying the property to the county was ever recorded. Plaintiff argues that certain statements and notations prove the existence of a deed which was given to the county but never recorded. This is a factual issue but one which does not affect the outcome of the case. Even if plaintiff successfully proves that a deed was given to the county, there is no deed to W. A. Copenhaver. The agreed-to facts show that some title, legal, equitable or both, was given to the county. However, at best all W. A. Copenhaver took in 1957 was a colorable equitable title. Therefore, any factual question raised by the arguments on this issue need not be decided.

To this point it has been decided that from and after March 5, 1957, W. A. Copenhaver owned a colorable equitable interest in the coal. This interest was passed on to his children and finally to plaintiff, his widow, who held the interest at the time of the alleged trespass. The questions that remain are whether an equitable interest is sufficient to support a trespass action, what type or quality of equitable title W. A. Copenhaver received and

what effect the deed ordered by the court on April 25, 1973, to be backdated to March 5, 1957, had as of the time of the alleged trespass.

Defendant first argues that an equitable title alone is not sufficient to support a trespass action. The case law, however, does not support this assertion. The parties have vigorously debated the issue of whether equitable title is or is not sufficient to support a trespass action. This debate has centered around the applicability of three reported cases and what defendant terms as "clearly established precedent" that legal title is required to support a trespass action. Plaintiff asserts that these three cases, Miller v. Zufall, 113 Pa. 317, 6 Atl. 350 (1886), Bechtel v. Rhoads, 3 S. & R. 333 (1817), and Gotshall v. J. Langdon & Co., 16 Pa. Superior Ct. 158 (1901), established that equitable title is sufficient.

An examination of these cases and the general law of trespass reveals that the type of title held by claimant does not alone determine whether an action of trespass is available. The key is actually the possession or right of possession of plaintiff. ". . . [T]he gist of an action of trespass to real property is the injury to the right of possession, [and] in order to maintain the action plaintiff must, at the time of the trespass, have been in the actual or constructive possession of the land on which the acts of trespass were committed." 75 Am. Jur. 2d, Trespass §22 (1974). Each of the three cases cited above allowed the trespass action to be brought by one holding less than full legal title. In Bechtel, plaintiff was purchaser of a warrant issued by the Commonwealth to evidence equitable title. In Miller, plaintiff was vendee of a written sales agreement. Although he had paid only part of the

purchase price, it was agreed that he should have immediate possession and plaintiff had in fact notified defendant of his right and warned him to cease the trespass. In Gotshall plaintiff was purchaser of the land under a parol contract, but had taken possession of the land and made improvements thereon while making payments on the purchase price.

These cases reveal that there is no set rule on what type of title is required to support a trespass action. The court must examine all the facts to determine whether plaintiff had sufficient title and/or possession to support a trespass action.

This then brings into prominence defendant's second argument on this issue, that W. A. Copenhaver purchased either nothing or only a partial equitable title since the record reveals that he paid only $5.71 of the confirmed purchase price of $41. Defendant argues this proves conclusively that plaintiff did not possess sufficient title to support her action while plaintiff argues that the full purchase price was paid.

We do not agree with either argument. The cases require an examination of all the facts; the facts and circumstances surrounding the tax claim bureau sale and the alleged purchase by W. A. Copenhaver have not yet been fully litigated. This raises a mixed issue of fact and law. In order to determine the legal issue of whether W. A. Copenhaver purchased sufficient title to support a trespass action, the court must have as complete a knowledge of the facts surrounding the sale and alleged purchase of the asserted title as is possible. The parties, concurrently, should have an opportunity to present and argue their version of the facts

and their legal significance. Here, both parties have argued that the facts as established by the record entitle them to a verdict as a matter of law. As indicated above, neither argument is persuasive.

Finally, plaintiff's argument that the backdated deed gives W. A. Copenhaver full legal title as of the date of the sale, and likewise gives plaintiff a right of action in trespass is without merit. The case must be decided on facts as they actually occurred. To hold that the backdated deed gave W. A. Copenhaver full legal title as of March 5, 1957, would be inequitable and contrary to the actual facts and to generally recognized property law principles.

Certainly a backdated deed delivered by the tax claim bureau pursuant to a court order issued in an ex parte proceeding without hearing or notice to anyone but the bureau can hardly be said to have settled the questions here presented.

Thus a mixed question of law and fact prevent summary judgment in this case. The facts and circumstances surrounding the alleged purchase of the coal rights by W. A. Copenhaver must be established before a determination can be made whether plaintiff had sufficient equitable title to support her trespass action.

## ORDER

And now, March 3, 1980, after oral arguments and the submission of briefs, and for the reasons contained in the annexed opinion, it is ordered, adjudged and decreed that both parties' motions for summary judgment are hereby denied and dismissed.