James E. Robbins, Appellant, *v.* Lemuel M. Farwell.

| 193 | 37 |
|---|---|
| 19 SC | ⁴317 |
| 193 | 37 |
| 28 SC | ⁶502 |
| 193 | 37 |
| 34 SC | ⁶639 |
| 193 | 37 |
| e220 | ⁶370 |
| 193 | 37 |
| 37SC | ¹492 |
| e37SC | ¹493 |

*Damages—Treble damages—Cutting timber—Province of court and jury.*

In an action of trespass for cutting timber where it clearly appears that single damages only were found by the jury, the court may subsequently double or treble the damages, or refuse to do so.

In an action to recover damages for cutting timber where the court expressly instructs the jury to find the amount of single damages, and the plaintiff permits the case to go to the jury without asking that an alleged parol title set up by defendant should be passed on by the jury, he cannot afterwards, on a rule to treble the damages by the court, be heard to complain that such title was not submitted to the jury.

*Evidence—Competency of witness—Party dead.*

In an action of trespass for cutting timber, the defendant is not a competent witness to testify as to an alleged parol sale of the land to himself by a deceased person under whom plaintiff claimed title.

Under the act of June 11, 1891, providing that a party otherwise incompetent may testify as to relevant matter occurring in the lifetime of deceased, if another and competent witness has testified that said relevant matter occurred in his presence and in that of the surviving party the testimony of such competent witness must be adverse to the surviving party.

*Appeals—Harmless error—Competency of witness.*

In a proceeding where a question of fact is decided by the court and not by a jury, the Supreme Court will not reverse because the defendant, although incompetent, is permitted to testify, where the other evidence in the case clearly established the fact to which the defendant testified.

*Statute of frauds—Parol sale of timber.*

A parol sale of timber to be immediately cut and removed is the sale of a chattel, and not within the statute of frauds.  It is not a mere license to cut, revocable at the pleasure of the grantor.

Argued March 14, 1899.  Appeal, No. 403, Jan. T., 1899, by plaintiff, from judgment of C. P. Clinton Co., Jan. T., 1895, No. 75, on verdict for defendant.  Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ.  Affirmed.

Trespass for cutting timber.

Rule for treble damages.    Before MAYER, P. J.

The facts appear by the opinion of the Supreme Court and by the opinion of the court below on a rule to treble damages.

The opinion of the court below was as follows:

This suit was brought to recover treble damages under the act of March 29, 1824, for cutting and converting a quantity of white pine timber trees, which were growing upon a tract of land in the warrantee name of Hugh Frazier, situate in what was known as Stephen's Valley in          township in this county.

[The plaintiff claimed that at the time this timber was cut, he was the owner as tenant in common with Charles R. Noyes, of the undivided one half of the Hugh Frazier tract.] [8]  On the trial of the case, the defendant testified that in 1887, he purchased from Charles R. Noyes all the oak and white pine timber on the Hugh Frazier tract for the consideration of $3.00 per 1,000 feet. He is corroborated in this by the testimony of J. E. Moore and C. K. Sober. Moore testified that in August, 1897, he went with Farwell to see Noyes about the timber; that "Farwell said to Noyes he came to close for that timber, he said he would take it, and they agreed on it, and he bought the timber. Q. What timber was it? A. It was the oak and white pine timber at $3.00 a thousand. Q. What was said at that time about writing an agreement? A. I cannot recollect the conversation, but simply that it was spoken of and not considered necessary." Sober testified that he made an agreement on April 6, 1889, with Noyes and Robbins for the purchase of a quantity of pine and oak timber, and when he met Noyes and Robbins for the purpose of consummating the agreement something was said about selling the pine and oak timber on the Hugh Frazier tract. "They said they had sold it to Mr. Farwell at $3.00 a thousand, the white pine and the white oak at that time."

[In pursuance of the parol contract made by Farwell with Noyes, he, Farwell, entered into possession of the Hugh Frazier tract, put on it a portable steam sawmill and made roads to the timber.] [9]

He first cut and manufactured into lumber the oak timber,

about which there is no dispute in this suit. When Farwell came to cut the white pine timber, he was notified in 1893 by Robbins not to cut it, but notwithstanding the notice Farwell went on and cut the white pine timber, claiming that he had purchased it together with the oak timber from Noyes. It is for the cutting and converting of this white pine timber that this suit was brought. [The evidence adduced on the trial did not show that Robbins had any interest in the Hugh Frazier tract when Noyes sold the oak and white pine on it to Farwell in 1887. The written contract, dated May 23, 1891, between Charles R. Noyes and James E. Robbins, the plaintiff, for the sale of the Bond lands, which included the Hugh Frazier tract, refers to an agreement in April or May, 1888, for the purchase of these lands, which would be the year after Noyes made the agreement with Farwell for the sale of the timber on the Frazier tract.] [10]

[Farwell certainly acquired by purchase from Noyes the undivided one half of the oak and white pine timber on the Hugh Frazier tract and became a tenant in common with Robbins of the oak and white pine timber, and if Farwell cut and removed the timber, he would only be liable in damages for the actual market value of the timber, at the place where it was cut and taken away.] [11]    Wheeler v. Carpenter, 107 Pa. 271; Bush v. Gamble, 127 Pa. 43.

[Robbins is not in a position to invoke the benefit of the statute of fraud and perjuries.] [12]    This might have been set up by the heirs of C. R. Noyes, to avoid the contract, but they are not here complaining. We do not, however, intend to decide, that under the circumstances this statute would even have availed them.

The jury having assessed single damages for the timber cut and claimed in this suit, the rule to show cause why the court should not treble the damages is dismissed, and judgment directed to be entered on the verdict of the jury, on payment to the sheriff of the jury fee.

Verdict having been rendered for plaintiff for $1,710.49, and interest $313, judgment was entered for $2,023.49.

*Errors assigned* were (1) in permitting Farwell to testify; (8–12) portions of opinion as above, quoting them; (13) in dis-

missing the rule to treble damages, and entering judgment on the verdict.

*T. C. Hipple*, for appellant.—Farwell was an incompetent witness: Kauss v. Rohner, 172 Pa. 488 ; Roth's Est., 150 Pa. 261 ; Thomas v. Miller, 165 Pa. 216 ; Krumrine v. Grenoble, 165 Pa. 98 ; Karns v. Tanner, 66 Pa. 297 ; Parry v. Parry, 130 Pa. 94 ; Duffield v. Hue, 129 Pa. 94 ; Irwin v. Nolde, 164 Pa. 205.

The growing timber was a part of the land itself, and title thereto did not pass by a mere verbal agreement to sell, and Noyes's right to sell could not be established by parol : Lewis v. Bradford, 10 Watts, 67 ; McKinley v. Peters, 111 Pa. 283 ; Hazleton v. Putnam, 54 Am. Dec. 159 ; Giles v. Simonds, 77 Am. Dec. 372.

A parol revocable license, such as this would be, was determined without notice to the licensee by a conveyance of the property upon which it was to be exercised : Yeakle v. Jacob, 33 Pa. 376 ; Holthouse v. Rynd, 155 Pa. 43 ; Watson v. Rynd, 76 Pa. 61 ; O'Reilly v. Shadle, 33 Pa. 489.

One, who having the right to cut certain timber trees on land cuts other trees, is liable for treble damages : Shiffer v. Broadhead, 24 W. N. C. 44.

*H. T. Harvey*, for appellee.—There was nothing in the case to warrant a verdict for treble damages, or the court would not have instructed the jury to allow interest, as such statutory damages do not bear interest : McCloskey v. Powell, 138 Pa. 383.

If the evidence of Farwell was incompetent, there is more than sufficient evidence to support the defendant's contention, and as was said by this Court in Bierly's Estate, 81* Pa. 419, 427 : " If then we eliminate from this record all incompetent evidence and there yet remains sufficient to sustain the finding of the auditor, why should we reverse on technical grounds ? The only result would be delay and additional expense to the estate : " Wheeler v. Carpenter, 107 Pa. 271 ; Bush v. Gamble, 127 Pa. 43 ; Dexter v. Lathrop, 136 Pa. 565.

The contract of Farwell with Noyes was a sale, and was not a mere license to cut timber : Pursell v. Stover, 110 Pa. 43 ; McClintock's App., 71 Pa. 365 ; Huff v. McCauley, 53 Pa.

206; Pattison's App., 61 Pa. 294; Rogers v. Gillinger, 30 Pa. 187.

OPINION BY MR. JUSTICE DEAN, October 6, 1899:

In 1893 Farwell, the defendant, went upon a tract of land warranted in name of Hugh Frazier, in Stephen's Valley, Clinton county, and cut and removed therefrom the white pine timber. The tract had been owned as tenants in common by James E. Robbins and Charles R. Noyes, to whom it had been conveyed in 1885 by John and James Bond. The plaintiff, Robbins, claimed that by a writing dated May 23, 1891, made in pursuance of a verbal agreement had between them in 1888, he had purchased from Noyes his half of the land with the timber thereon, and had thereby become the sole owner. Farwell claimed to be the owner of Noyes's half of the oak and pine timber thereon, by a verbal agreement with Noyes in 1887. The price agreed to be paid was $3.00 per thousand. Noyes died in June, 1893. The plaintiff brought suit in trespass against Farwell, October 22, 1894, and the issue was tried January 12, 1897. Farwell admitted the cutting and removal of the timber; the court, on the evidence, directed the jury to find the quantity and value of it as it stood at the date of the alleged trespass, single damages only, leaving it open to plaintiff to take a rule for treble damages under the act of March 29, 1824. The jury found for plaintiff single damages in the sum of $2,023.49. The plaintiff then entered a rule on defendant for treble damages which, on hearing, the court, in opinion filed, discharged, and we have this appeal by plaintiff, who assigns twelve errors. In substance they may be grouped under three heads: 1. The court had no power to determine whether the damages should be trebled, that being a question for the jury on any view of the evidence. 2. The court erred in admitting, against the objection of plaintiff, the testimony of Farwell, the defendant, his grantor, Noyes, being deceased. 3. Under the evidence, the alleged parol purchase by Farwell of standing timber from Noyes could not prevail against the written agreement of sale to Robbins after notice to Farwell.

As to the first complaint, ever since Welsh v. Anthony, 16 Pa. 254, decided in 1851, the trial courts have exercised the power of doubling or trebling the damages, or refusing so to do,

where it clearly appeared but single damages only were found
by the jury; and this Court has in a number of cases since Welsh
v. Anthony, supra, recognized the authority. While trespass
is a common-law action, the infliction of the penalty is purely
statutory; and the statute does not expressly or by implication
put upon the jury the duty of imposing the penalty; it simply
directs that the trespasser shall be liable to pay to the owner
treble the value of the timber cut. Whether the penalty should
be imposed, depends upon the wrongfulness of the entry; the
wrongfulness may be determined by the law alone, or it may be
a mixed question of law and fact; and the court may, in fixing
the penalty, leave questions of fact on conflicting evidence to
the jury, or it may itself determine them. In this case, plain-
tiff declared for treble damages, and the court expressly in-
structed the jury to find the amount of single damages. Besides,
the court made this remark to counsel immediately before they
addressed the jury: " Go to the jury on the value of the white
pine, and as to treble or single damages, we will decide that
afterwards." Neither counsel objected or excepted to the action
of the court in this particular; if there was anything in defend-
ant's alleged parol title which, as a question of fact, should
have been passed upon by the jury, the plaintiff was bound
then to call the attention of the court to it; but, after taking
his chances on the court's determination of the rule for treble
damages, he now urges that the credibility of the witnesses who
testified to the parol sale was at least, for the jury, and should
have been submitted to them. That argument should have been
made to the court when it distinctly announced its purpose to
pass upon the question after verdict. Plaintiff's counsel having
been silent then, he will not be heard now.

The second assignment, being to the admission of the testi-
mony of Farwell, the defendant, has more of merit. His claim
that he was not a trespasser rested on the fact of a parol sale
to him by Noyes, who was dead. In the long roll of cases
interpreting the act of 1869 and its supplements, the latest,
Brothers v. Mitchell et al., 157 Pa. 484, is clearly in favor of
plaintiff's contention. In the case before us, as in that, the
assignor of the thing in action was dead; it was claimed that
his right had passed to a party of record, who was called as a
witness; the witness was held incompetent by the court below,

and the ruling was affirmed by this Court, although both parties claimed under the same grantor. Nor was he made competent by the act of June 11, 1891. That act provides, in substance, that a party otherwise incompetent may testify as to relevant matter occurring in lifetime of deceased, if another and competent witness has testified that said relevant matter occurred in his presence and that of the surviving party. The act palpably means that the testimony of this competent witness is adverse to the surviving party. Here, J. E. Moore was called by Farwell, who testified to a conversation between Noyes and Farwell establishing the parol contract; but this did not render Farwell competent, because Moore was not adverse, but a witness called by himself. If the case turned on this testimony, it would have been reversed. But it does not so turn; there was ample evidence to establish the fact that Farwell was not a trespasser, when his own testimony is out of the case altogether. Bearing in mind that the tribunal to pass upon the testimony was not the jury, the effect on whose minds of the incompetent testimony would be undiscoverable, but the court, whose finding of the fact on the rule to treble damages is reviewable here, was defendant a trespasser? J. E. Moore testified to the oral contract between Noyes and Farwell in his presence, and its terms, and further, that the plaintiff, Robbins, directed them to the tract of land that they might examine the timber; that afterwards, Robbins said to him Noyes had no right to sell his share of the timber. C. K. Sober testified that Noyes and Robbins told him, when together, that they had sold the pine and oak to Farwell at $3.00 per thousand. Both these witnesses are disinterested. We next take the conduct of the parties. By a written agreement between Noyes and Robbins, made in 1891, and offered in evidence by plaintiff, there is a provision that the Farwell timber shall be accounted for, and Robbins admitted that the Hugh Frazier tract was one of the tracts embraced by this agreement. It was further admitted by plaintiff that Farwell had cut the oak timber under a purchase from Noyes, and that he had settled with him and Noyes and paid for it in 1892, yet this settlement also showed a large quantity of pine cut that year. It is not disputed that Farwell, with the consent of Robbins, secured a sawmill near the land, at large expense constructed his roads

and tramways into the timber, cut the oak and part of the pine, settled and paid for it to Noyes and Robbins in the year 1892; then, in the year 1893, after the death of Noyes, Robbins first sought to treat Farwell as a trespasser. We think, eliminating the testimony of Farwell altogether, the evidence clearly shows Farwell went upon the land under a parol purchase of the timber from Noyes, with the consent of Robbins, the other tenant in common. If this be so, then the admission of the testimony of Farwell to establish the parol sale did plaintiff no harm. We will not reverse for an error not prejudicial to the complaining party.

As to the third assignment, it is argued the standing timber was land; that even admitting the parol sale to have been made, yet, that afterwards, Robbins, by his purchase in writing from Noyes, became the owner of the whole, therefore, under the statute of frauds and perjuries, he could treat the parol sale as a mere license to cut timber, which license he could revoke, and that having notified Farwell not to cut and remove the white pine in 1893, the latter became a wilful trespasser when he persisted in doing so, and, therefore, is answerable in treble damages. We are of the opinion the statute of frauds has no application to the facts. The question is not what title defendant had to the land, but whether his entry upon it under his contract with Noyes to cut the timber was wrongful. He did not pretend to have purchased the land; he did aver and prove that he had purchased the timber with a view to immediate severance, and commenced to cut and remove it; did cut and remove all of it, and accounted and paid for a large part of it. We held, in Pattison's Appeal, 61 Pa. 294, as follows: " We regard a contract for standing timber on a tract of land, to be taken off at discretion as to time, as an interest in land, and within the statute of frauds and perjuries." But then, in McClintock's App., 71 Pa. 365, the distinction between a contract to take off the timber at discretion, and one contemplating an immediate severance, is thus pointed out: " In agreements for the reservation or sale of growing timber, whether the timber is to be regarded as personal property, or an interest in real estate, depends on the nature of the contract and the intent of the parties. If the agreement does not contemplate the immediate severance of the timber, it is a contract for the sale or

reservation of an interest in land. . . . But when the agreement is made with a view to the immediate severance of the timber from the soil it is regarded as personal property."

In this contract, it was intended by both parties that the timber should be immediately cut and removed; it was so cut and removed, and plaintiff, as to a considerable part, received his share of the proceeds; this was not a mere license to cut, revocable at pleasure of the grantor; it was the irrevocable sale of a chattel, in part delivered, and in part actually paid for. The act of defendant bears no resemblance to a trespass upon land; he entered to fulfil his part of the bargain with the owner. It would be a perversion of the act of 1824 to subject him to the heavy penalty of treble damages for so doing.

We see nothing in any of the assignments of error calling for further notice; no one of them is sustained.

The judgment is affirmed.