# Kaiser, Appellant, *v.* Insurance Co. of North America.

*Insurance — Fire insurance — Conspiracy to cheat — Burden of proof—Evidence.*

1. In an action against an insurance company to recover for loss of goods alleged to have been destroyed by fire on an automobile,

where defendant alleges a conspiracy between plaintiff and others to defraud, defendant is not required to present direct and positive testimony of a conclusive agreement to do something unlawful.

2. In such case more than a mere suspicion must be raised, and the burden rests on defendant to establish the conspiracy by the preponderance of the evidence.

3. Such duty is met when, from the facts and circumstances, the only fair inference to be drawn is the formation of an illegal combination.

Argued March 28, 1922. Appeal, No. 70, Jan. T., 1922, by plaintiff, from judgment of C. P. No. 2, Phila. Co., Sept. T., 1919, No. 3006, on verdict for defendant, in case of Benjamin Kaiser v. Insurance Company of North America. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON and SADLER, JJ. Affirmed.

Assumpsit on policy of fire insurance. Before ROGERS, J.

The opinion of the Supreme Court states the facts.

Judgment and verdict for defendant. Plaintiff appealed.

*Errors assigned* were various portions of the charge, quoting them.

*Bertram D. Rearick,* for appellant.—One who alleges a conspiracy must prove it: Ballentine v. Cummings, 220 Pa. 621; Morrow v. Morrow, 61 Pa. Superior Ct. 208.

A conspiracy might exist and yet a party directly or indirectly concerned in the purpose of the conspiracy may not be a party to it: Weil v. Cohn, 4 Pa. Superior Ct. 443.

In order to prove a conspiracy the evidence must do more than raise a suspicion: Merchants & Mfg. Bank v. Tinker, 158 Pa. 17.

Before the acts of admitted conspirators can be given in evidence against a third person there must be evidence aliunde to show such third person's connection with the conspiracy: Benford v. Sanner, 40 Pa. 9.

*F. S. Laws,* of *Lewis, Adler & Laws,* for appellee, cited: Ballantine v. Cummings, 220 Pa. 621; Com. v. Richardson, 229 Pa. 609; McElroy v. Harnack, 213 Pa. 444; Catasauqua Mfg. Co. v. Hopkins, 141 Pa. 30.

OPINION BY MR. JUSTICE SADLER, April 24, 1922:

Plaintiff is a jobber of woolen goods in the City of Philadelphia. He claimed to have sold to a brother, residing in New York, certain merchandise for $24,612. After securing a policy of insurance, covering loss by fire, Kaiser consigned the material to him and employed Weisberg's trucking firm to transport it. Directions were given the latter to call at his store for loading, and, in pursuance of this request, a motor was brought there. In the meantime, one Jackson, who had a record as a receiver of stolen goods, engaged a second firm,—the Probinskys,—to carry the property to its destination, and arranged with Weisberg to transfer on to their vehicle the goods to be moved. Both truckmen came to plaintiff's place of business at the same time, as directed. The rolls of cloth,—the number of which was in dispute,— were first placed on Weisberg's truck, he giving a receipt for 286 pieces, and then, at least in part, put by him into the possession of the second driver. This occurred at Kaiser's store, while he was present, and both motors drove away about five o'clock. Probinsky arrived in New York with 126 bolts, but, instead of delivering to the consignee, Jackson requested the property be taken to Newark, whither it was removed on the following day. Subsequently, the cloth was turned over to the police, the driver having become suspicious of the transaction.

In the meantime, Weisberg reported the loss of his truck by fire, which the plaintiff claimed was carrying the whole consignment, and a prompt demand was made by him upon the insurance company for the value of the entire lot of 286 pieces, claiming this quantity had been delivered to Weisberg for transport. Later, the goods found on the Probinsky truck were turned over to him

by the police. The insurance company refused to pay for the additional woolens. Any loss by fire was denied, it being insisted that solid rolls of material could not have been destroyed, in a blaze such as described, without leaving some remnants, and none appeared. The driver in charge of the car at the time was not produced, either then, or at the trial.

Payment having been refused, Kaiser brought suit against the defendant for $11,112, the alleged total value of the 160 bolts, and the further sum of $3,704, damages occasioned to the property returned by smoke and dirt. The company denied 286 bolts had been delivered to anyone, that the goods were of the value set forth, or that any fire had occurred. It insisted the entire transaction was fraudulent,—a mere scheme devised to cheat it of the amount of insurance named in the policy.

Facts and circumstances were alleged indicating a conspiracy, from the consummation of which the plaintiff expected to benefit; admittedly, if this contention is supported by the evidence, no recovery can be had. At the trial, after receiving proof of the actual occurrences, the court advised the jury the plaintiff was entitled to a verdict for the amount of any real loss suffered, covered by the policy issued, unless it appeared he was a party to an unlawful attempt to impose upon the insurance company, following which the jury rendered a verdict for defendant. It is now insisted, there was not sufficient evidence to submit, showing Kaiser aided in any fraudulent scheme, even though Weisberg and Jackson may have thus attempted. There is no direct proof of any preliminary understanding with plaintiff, but many facts were presented from which a jury could justifiably find that he was associated in the plan.

It is to be noted Weisberg was employed by Kaiser, and directed to bring his truck to the rear of the store at a fixed time. Jackson arranged with Weisberg, and the second truck driver, to have his motor there at a like hour. The plaintiff was in the building when the one

truck was loaded and the merchandise transferred to the second. Notwithstanding the consignment was of large value, the packages were not counted, nor was any memorandum made of the number, though a receipt was taken from Weisberg for 286 bolts. The property actually placed upon the second truck was found in Newark, and numbered but 126 pieces. These had been taken first to New York, ostensibly for delivery to the brother, who did not appear at the trial, and were billed at higher than cost price, though the market had declined at the time some 35 or 40 per cent. No sufficient evidence of the destruction of the remaining goods by fire was apparent at the place where it is supposed to have occurred. When notified of the loss, the plaintiff made no attempt to investigate, but immediately claimed the value of the entire shipment. From all these facts, which were fairly presented to the jury, a conclusion was reached by it which we are not prepared to say was unwarranted.

Defendant was not required to present direct and positive testimony of a collusive agreement to do something unlawful. The nature of the crime attempted usually makes it susceptible of no other proof than by circumstantial evidence: 12 C. J. 634. More than a mere suspicion must be raised, and the burden rests upon the one asserting the conspiracy to establish it by the preponderance of the evidence: 12 C. J. 640; Catasauqua Mfg. Co. v. Hopkins, 141 Pa. 30; McElroy v. Harneck, 213 Pa. 444; Percival v. Harres, 142 Pa. 369. And this duty is met when, from all the facts and circumstances, the only fair inference to be drawn is the formation of an illegal combination: Ballantine v. Cummings, 220 Pa. 621. Here, the testimony was of a character which made necessary its submission to a jury, and justified a finding of Kaiser's connection with the attempted fraud. All the assignments of error relate to the one proposition, complaining of the lack of sufficient proof of participation, and all are overruled.

The judgment is affirmed.