Novic et al., Appellants, *v.* Fenics et al.

. Argued January 3, 1940.  Before SCHAFFER, C. J.,
MAXEY, DREW, LINN, BARNES and PATTERSON, JJ.

*John D. Meyer,* for appellants.

*O. K. Eaton,* with him *Walter L. Riggs,* for appellees.

OPINION BY MR. JUSTICE MAXEY, March 25, 1940:

Nove and Gabriel Novic brought separate suits against the three defendants, charging them with having unlawfully conspired to destroy plaintiffs' interests in a certain partnership and bringing the same to ruin in a bankruptcy proceeding. The appeal in each case is from the court's refusal to remove the compulsory nonsuit which was entered at the close of the plaintiffs' cases.

The two suits were tried together, the pleadings and evidence being substantially identical in each case. The plaintiffs' proof established the following: The two Novics, who were cousins, formed a partnership in 1924 with Sandor Fenics, one of the defendants, to establish and carry on a baking business known as McKeesport Baking Company. There were written articles of agreement, under which each partner having contributed one-third of the capital shared equally in the profits. The business prospered during the years prior to 1929. About 1928 a program of expansion was adopted, which later proved to have been unwise. In that year another bakery was purchased for approximately $12,000, increasing the firm's loan at its bank. This venture resulted in almost a total loss; a year later there was an entry of a judgment for rent, against the partnership in an amount exceeding $15,000. In 1929 a new type of oven was purchased for $16,200; it proved to be inefficient. Another substantial judgment was entered against the partners for the balance due on the purchase price of this oven. A retail store was leased and placed in operation, but it had to be abandoned. The gross business of the firm rapidly declined from $800 a day

in 1929 to $300 a day in 1932. After dissension among the partners, they visited their attorney, Kaplan, and signed a new partnership agreement, dated April 22, 1930, by which it was hoped to eliminate personal causes of friction. But success still eluded the partnership and a consent receivership was agreed upon, and one of present counsel for appellees, Walter L. Riggs, operated the business as receiver from November, 1930, to October, 1931, when he was discharged and the business restored to its owners. During the receivership a loan of $12,000 was advanced by Mrs. Fenics, who is one of the defendants and the wife of another.

After the receivership terminated, the business still failed to improve. Ill-feeling was renewed between appellants and the Fenics. The bank with which the firm did business held a $2,000 note of Gabriel Novic, on which the firm was endorser. When the bank entered judgment, the third defendant, Klein, acting for Mrs. Fenics, purchased the judgment with money advanced by her. Another creditor likewise entered judgment. The partners were without funds to continue the business. They all participated in a conference at the office of the attorney, Kaplan, where appellants voluntarily, on the advice of counsel, signed a consent to the appointment of a bankruptcy receiver. Thereupon Klein joined with two other creditors in a petition in bankruptcy, filed November 2, 1932. The firm and its several partners were duly adjudicated bankrupts and a receiver appointed. A public sale of the firm's personal property, including bakery machinery and equipment, was held, at which Klein, again acting for Mrs. Fenics, became the purchaser for $6,610. Subsequently he purchased for her the real estate, subject to a mortgage, for the nominal sum of $200. There was no irregularity whatever in the bankruptcy proceedings, and no objection was interposed at any step by appellants. Ultimately Fenics was discharged in bankruptcy and the bankrupt estate paid dividends of 20% to its creditors.

Klein transferred the firm properties to Mrs. Fenics. Since the bankruptcy she has continued to operate the business on the same premises as the McKeesport Baking Company.

More than three years after the bankruptcy proceeding was commenced these suits were begun. In each the respective plaintiff charged that the Fenics, husband and wife, had conspired with each other, and likewise with Klein and other parties unknown to plaintiff, to cheat and defraud the partnership, and thus injure and destroy plaintiff's interest therein, by appropriating its moneys and property, failing to account to it for sums received, and creating a false appearance of insolvency so as to make bankruptcy inevitable. A collusive purchase of the assets by defendants to their own advantage and aggrandizement at the expense of plaintiffs was also charged. Because the court below concluded that the proof failed to sustain these allegations, the nonsuits were entered.

There was no direct proof of a collusive agreement between defendants. The evidence as to the alleged conspiracy was circumstantial. Even where instances of wrongful or malicious conduct were shown to have occurred, they were only occasional and never attributable to the third defendant, Isadore Klein. He was called as a witness for appellants and testified there was never any agreement or understanding between him and the Fenics, or any attempt on his part to undermine the partnership business or wreck its solvency. He admitted acting for Mrs. Fenics in the purchase, first of the $2,000 judgment held by the bank against the firm, and later of the partnership property at the receiver's sale. He was a friend of the family and had business conferences with them. No inference of misconduct on his part could be drawn from the evidence. The charges against this appellee were clearly unsupported by the evidence.

The principal complaint against Mr. and Mrs. Fenics was that just prior to the date of the second partnership

agreement, April 22, 1930, Fenics himself, who had charge of checking the sums turned in by the bakery truck drivers after making their daily rounds and of depositing the receipts in the bank, was guilty of shortages in making the deposits in the firm account. A daughter of one of the plaintiffs, who was employed as bookkeeper at that time, gave vague and cryptic testimony that early in April Fenics altered deposit slips to such an extent that approximately $3,000 of the firm's money found its way into Fenics' personal account rather than into the firm's. She said she immediately informed her father of these alleged peculations, but he did nothing about it. Nowhere in the record, however, was it explained what became of this money. At that time there was a dispute of long standing between the partners over a claim by Fenics that the firm owed him about $3,500 in addition to his capital investment. Immediately thereafter the new partnership agreement was signed, which included a provision that this indebtedness should be left open for negotiation. Either then or subsequently the firm's counsel wrote on the margin of the agreement that the amount of the debt was definitely ascertained to be $3,525 due and owing Fenics, and all the partners signed this notation. The partners then signed a note in this amount payable to Fenics. Plaintiffs testified that the matter was considered and in the interest of harmony they assented to this settlement. The evidence as to Fenics' prior unwarranted withdrawals of firm funds was as much consistent with his having paid himself first and later restored the money to the firm, as it was with the inferences appellants sought to draw.

The only other evidence of any consequence which tended to show a conspiracy between the husband and wife defendants was concisely summarized by the trial judge in his opinion as follows: "The plaintiff offered the testimony of Bakalovich, a former driver of the firm, who was discharged July 20, 1932, after a fight with

Gabriel Novic. After this date Fenics arranged to deliver bread to Bakalovich, without the knowledge of his partners, which continued up to about November. Bakalovich testified that he made payments for these deliveries to Mrs. Fenics, and it can be inferred that the payments for the bread did not find their way into the cash drawer of the partnership. There was testimony that during these last few months of the partnership Fenics told the drivers not to force people to pay, but to leave an unpaid balance on their customers' books, saying that the company was almost in the hands of a receiver. There was testimony that several months before the bankruptcy Fenics said that he was going to 'play' them out of the business." In addition, there was some further testimony that the firm's truck drivers, including Bakalovich, and all the others, were habitually short in their accounts, and that Fenics knew about this, but nothing was done about it, with resulting loss to the firm; nothing in this evidence tended to show wrongdoing by the Fenics. The firm's bookkeeping was a model of confusion, if not of chaos. All the testimony was so replete with self-contradiction as to furnish no basis for a decisive finding.

We are in full accord with the conclusions reached by the court below in its opinion: "Looking at the testimony in the light most favorable to plaintiff, it showed no more than isolated acts indicating trouble between the partners, but under no view of it can it be shown that a prosperous going concern reached bankruptcy as the result of a conspiracy among the defendants. In order to sustain a recovery, the burden is on the plaintiff to show by sufficient testimony that a conspiracy existed, and that as a result of the fraudulent acts of the defendants, the partnership was caused to fail and end in bankruptcy. There is no direct testimony showing that a collusive agreement had been entered into to do these unlawful things, but plaintiff relies upon circumstantial evidence to prove the conspiracy. When

this is done, the trial judge must decide whether or not such circumstantial evidence is sufficient to establish, in point of fact, that the unlawful combination had been entered into by the defendants, or by some of them, at some prior time. When conspiracy is alleged, it must be proven by full, clear and satisfactory evidence. When plaintiff also relies on subsequent acts to establish the conspiracy, these acts must be such as to clearly indicate the prior collusive combination and fraudulent purpose, not slight circumstances of suspicion, and these subsequent acts must be such as to warrant the belief and justify the conclusion that the subsequent acts were done in furtherance of the unlawful combination and in pursuance of the scheme to wreck the business and cause the bankruptcy. This court is of the opinion that plaintiff did not offer evidence sufficient to take his case to the jury." As sustaining the foregoing, it is unnecessary to do more than cite a few of our decisions dealing with the question of the measure of circumstantial proof required in conspiracy cases: *Ballantine v. Cummings*, 220 Pa. 621, 631-32, 70 A. 546; *Kaiser v. Ins. Co. of North America*, 274 Pa. 239, 243, 117 A. 791; *Rosenblum v. Rosenblum et al.*, 320 Pa. 103, 105, 181 A. 583; *Com. v. Benz*, 318 Pa. 465, 178 A. 390; *Com. v. Bardolph*, 326 Pa. 513, 525, 192 A. 916. These cases show that the rule that "when conspiracy is alleged it must be proven by full, clear and satisfactory evidence" (*Ballantine v. Cummings*, supra, at p. 631) has been applied both to civil cases and to criminal prosecutions. The evidence offered by appellants did not measure up to the accepted requirements.

In various assignments of error appellants urge that the court below erred in refusing to admit the testimony of either Fenics or his wife, both of whom were parties defendant, as to the facts and circumstances surrounding the operation of the bakery business and its ultimate liquidation. Appellants called both defendants for cross-examination, and in each instance their testimony was

ruled incompetent under the Act of May 23, 1887, P. L. 158, sec. 5(c), as amended by the Act of May 10, 1927, P. L. 861 (28 PS Sec. 317), forbidding husband and wife to testify "against each other." Here the charge against husband and wife was a joint one, namely, conspiracy to defraud, and it was essential to plaintiffs' recovery that this charge be established by competent proof. It is obvious that in calling either one or the other to the witness stand, plaintiffs intended to elicit facts in support of the alleged conspiracy and that the testimony of either spouse would necessarily be "against" the other. This is what the statute forbids, and we are of the opinion that the trial judge properly rejected this testimony. The point is ruled in *Canole v. Allen,* 222 Pa. 156, 70 A. 1053, which was also a case where the husband and wife were jointly sued and one spouse was called on cross-examination to testify against the other. We there sustained the common-law rule of incompetency now embodied in the statute. See also *Bell v. Throop et al.,* 140 Pa. 641, 21 A. 408; and *Cornelius v. Hambay,* 150 Pa. 359, 24 A. 515. There was here no allegation or proof of agency on the part of one for the other, which might make the rule inapplicable: *Callendar v. Kelley, Assignee, etc.,* 190 Pa. 455, 42 A. 967; *Barnhart v. Grantham,* 197 Pa. 502, 47 A. 866. See also *Schreiber v. Schreiber et al.,* 310 Pa. 173, 165 A. 41, and *Haas v. Fitzpatrick,* 117 Pa. Superior Ct. 21, 177 A. 326.

Although not now urged as error on these appeals, another ruling of the learned trial judge invites comment. Near the conclusion of the case each of the plaintiffs was called to the stand and asked by his counsel to state the fair value of his share in the partnership on the date when the petition in bankruptcy was filed. On objection, the trial judge refused to permit the question to be answered. The plaintiffs were obviously incompetent to testify as to what their share of the partnership was worth, for an answer to the question

involved complicated questions as to the value of real estate, machinery and equipment, problems of depreciation, and ascertainment of indebtedness. In the absence of competent evidence plaintiffs' case failed. In liquidation, although the assets realized $6,000 or $7,000, dividends of only approximately 20 per cent on the dollar were paid to creditors. Appellants failed in their attempt to show if the defendants had not been guilty of the wrongful acts imputed to them, bankruptcy could have been avoided or postponed. Since the record discloses no proof to support an award of damages, any submission of the case to a jury must have resulted in a verdict based on mere conjecture.

The judgment in each case is affirmed.