Commonwealth, Appellant, *v.* Musser Forests, Inc.

Argued May 26, 1958. Before JONES, C. J., BELL, MUSMANNO, ARNOLD and JONES, JJ.

re-
argument refused January 3, 1959.

Lois G. Forer, Deputy Attorney General, with her
Thomas D. McBride, Attorney General, for appellant.

John Y. Scott, with him E. E. Creps, for appellees.

OPINION BY MR. CHIEF JUSTICE JONES, November
25, 1958:

The Commonwealth seeks by this action in trespass
to recover damages from the defendant, Musser For-
ests, Inc., and the several named individual defend-
ants, some of whom are officers and all of whom are
stockholders of the defendant corporation. The de-
fendants filed preliminary objections to the plaintiff's
amended complaint. After argument thereon, the
court below sustained the objections and entered judg-
ment for the defendants. The Commonwealth has ap-
pealed.

The gravamen of the complaint is that the defend-
ants conspired among themselves to defraud the Com-
monwealth by concertedly breaching a series of con-
tracts which the various defendants separately entered
into with the Department of Forests and Waters for
the purchase by them from the Commonwealth of large
quantities of seedling or transplant trees at cost as au-
thorized by the Forest Tree Seedling Act of May 5,
1927, P. L. 817, §2, as amended by the Act of June 21,
1947, P. L. 777, §1, 32 PS §454. Under the contracts

of purchase, the defendants covenanted to conserve the trees, so purchased by them, solely for possible future wood products or watershed protection. The complaint further alleges certain well-defined overt acts in furtherance of the alleged conspiracy, viz., the defendants' sale of the trees commercially for ornamental purposes.

All of the contracts between the defendants and the Commonwealth for the purchase and sale of trees contained, substantially, the following in accordance with the provisions of the Forest Tree Seedling Act, supra: "(a) That all forest tree seedlings and transplants so purchased shall be planted in Pennsylvania on the site indicated in the sketch attached hereto and made a part thereof for watershed protection or for wood products; (b) That the trees will not be sold by the purchaser for removal from the land until they become large enough for use as wood products; (c) That a report on the planting will be furnished by the planter when requested by the Department; (d) That the planted area will be protected as far as possible from fire, grazing, and trespassing; (e) That the trees will not be planted for hedges, table trees, potted trees or for shade or ornamental use; (f) That if such trees are sold or offered for sale for ornamental purposes the person, partnership, or corporation shall become liable to the Commonwealth for the payment of a penalty equal to three times the sale value of the trees sold . . ." and that the purchaser ". . . fully understand[s] that the term 'ornamental purposes' is construed to include the use of the trees as Christmas trees."

The court below concluded that the amended complaint fails to state a cause of action in trespass for damages resulting from the defendants' conspiracy to violate their covenanted obligations to the Common-

wealth and that, since the Commonwealth's claim for damages is laid in a sum three times the sales value of the trees sold by the defendants, the Commonwealth is in effect seeking payment of what the Forest Tree Seedling Act denominates a penalty and that, consequently, the suit is barred by the Act of March 26, 1785, 2 Sm. L. 299, §6, 12 PS §44.

The averments of the complaint, if supported by proof at trial, would warrant a jury's finding that all of the contracts between the defendants and the Commonwealth were entered into by the defendants in furtherance of the original conspiracy and were carried to fruition by the subsequent breaches. Thus, the complaint is replete with averments of fact which, if proven, would justify a finding of a civil conspiracy on the part of the defendants to defraud the Commonwealth to its damage, and that the conspiracy was fully and effectively carried out by the defendants to their own pecuniary advantage.

Since the defendants have chosen to file preliminary objections, in the nature of demurrers, every material and relevant fact well-pleaded and every inference fairly deducible therefrom are to be taken as true: *Byers v. Ward,* 368 Pa. 416, 420, 84 A. 2d 307. Thus, for present purposes, it is admitted that the defendants have not only failed to conserve the seedlings and transplants as they were under express obligation to the Commonwealth to do but that they have actually sold the seedlings and transplants commercially for ornamental purposes. These averments and others in the complaint, such as the defendants' actions in respect of the land specified for the planting of the seedlings and transplants and the one report they ultimately made jointly to the Commonwealth of their asserted disposition of the seedlings and transplants, support a reasonable inference that throughout the defendants

were acting in concert with the common purpose of defrauding the Commonwealth for their personal gain.

It is well established, and sustained by abundant authority, that a conspiracy may be proven by circumstantial evidence: *Ballantine v. Cummings,* 220 Pa. 621, 630-631, 70 A. 546; *Kaiser v. Insurance Co. of North America,* 274 Pa. 239, 243, 117 A. 791; *Novic v. Fenics,* 337 Pa. 529, 534-535, 11 A. 2d 871; *Commonwealth v. Mittelman,* 154 Pa. Superior Ct. 572, 581, 36 A. 2d 860. Necessarily, even in a criminal conspiracy proceeding, the actions of the conspirators will be sufficient evidence to prove that a conspiracy exists: *Commonwealth v. Strantz,* 328 Pa. 33, 43, 195 A. 75; *Commonwealth v. Rosen,* 141 Pa. Superior Ct. 272, 277, 14 A. 2d 833. The rule is, of course, not limited to criminal conspiracy; it is equally applicable to cases involving civil conspiracy: *Kaiser v. Insurance Co. of North America,* supra, at p. 243.

In *Commonwealth v. Strantz,* supra, at p. 43, the court aptly stated that "An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities . . . . 'The joint assent of minds required to sustain a charge of conspiracy may be inferred from facts which establish . . . that the conspiracy had been formed.' " The following figurative description is contained in *William Goldman Theatres, Inc. v. Loew's, Inc.,* 150 F. 2d 738, 743: " 'The picture of conspiracy as a meeting by twilight of a trio of sinister persons with pointed hats close together belongs to a darker age.' Temporary National Economic Committee, Monograph No. 16, p. 15."

In an early case, *Rogers v. Hall,* 4 Watts 359, 361, Chief Justice GIBSON stated "Now the least degree of concert or collusion between parties to an illegal trans-

action makes the act of one the act of all . . . ." The rule has been summarized, at a more recent time, as follows: "Defendant was not required to present direct and positive testimony of a collusive agreement to do something unlawful. The nature of the crime attempted usually makes it susceptible of no other proof than by circumstantial evidence . . . .": *Kaiser v. Insurance Co. of North America*, supra, at p. 243.

The Act of 1785, which provides that all actions, etc. "for any forfeiture upon any penal act of assembly" shall be brought within one year after the offense is committed, is not germane to the redress afforded the Commonwealth by the contracts drawn in accordance with the requirements of the Forest Tree Seedling Act. Nonetheless the court below gave the Act of 1785 present effect by construing the word "penalty", used in the Forest Tree Seedling Act, as coming within the term "forfeiture" in the 1785 statute of limitations. It is, of course, well known that the description "penalty" does not *ipso facto* connote a penalty in the restricted sense of that term but may well be a convenient formula for determining damages in particular circumstances. Certainly, the Commonwealth's right of recovery under the contracts does not work a "forfeiture upon any penal act of assembly." Neither by intent nor scope does the Forest Tree Seedling Act qualify as a penal statute which even a cursory reading of the Act will readily confirm.

In *Gross v. Exeter Machine Works, Inc.*, 277 Pa. 363, 369, 121 A. 195, it was stated that "Whether the parties have denominated the sum specified in any given case a penalty or liquidated damages is of little moment in determining its real character: Kunkel & Jordan v. Wherry, 189 Pa. 198." See also *Sautter v. Rowland*, 285 Pa. 212, 217, 131 A. 733. In *Keck v. Bieber*, 148 Pa. 645, 646, 24 A. 170, Chief Justice

MITCHELL said that, "The name by which [a penalty or liquidated damages clause] is called is but of slight weight, the controlling elements being the intent of the parties, and the special circumstances of the case." The following statement contained in *March v. Alla-bough,* 103 Pa. 335, 341, has often been quoted as the test for determining whether a particular term will be enforced as a liquidated damage provision. "[T]he question . . . is to be determined by the intention of the parties, drawn from the words of the whole contract, examined in the light of its subject matter and its surroundings; and that in this examination we must consider the relation which the sum stipulated bears to the extent of the injury which may be caused by the several breaches provided against, the ease or difficulty of measuring a breach of damages, and such other matters as are legally or necessarily inherent in the transaction."

The fact of the matter is that the damage done the Commonwealth by the defendants far exceeded the value of the trees sold. In entering into the contracts for the sale of trees to the defendants, the Commonwealth bargained to receive as a legal benefit from the transaction improved watershed protection, better soil conditions, better crop protection, and a more abundant future supply of timber for wood products. In other words, the contracts were entered into by the Commonwealth for conservation purposes and were designed to help protect some of the State's natural resources and advantages. The language of the various contracts makes it plain beyond question that the dominant purpose of the Commonwealth, in entering into the contracts, was to receive conservation benefits. Thus, the contracts provided, *inter alia,* as required by the Act that, "(a) . . . all forest tree seedlings and transplants so purchased shall be planted *in Pennsyl-*

*vania* on the site indicated in the sketch attached hereto and made a part thereof *for watershed protection or for wood products;* (b) That the trees will not be sold by the purchaser for removal from the land until they become large enough for use as wood products . . . (d) That the planted area will be *protected* as far as possible from fire, grazing, and trespassing . . ." (Emphasis supplied).

As a result of the defendants' alleged wrongful conduct, the Commonwealth did not receive the benefits for which it had bargained. To estimate the actual pecuniary loss suffered by the Commonwealth as a result of the defendants' breaches would be a problem presenting difficulties beyond solution. It would not be possible to estimate the damage from insufficient watershed, from soil erosion, or to the lessening of the future timber supply for wood products. Since the legal benefit for which the Commonwealth had bargained in its transactions with the defendants was clearly far in excess of the sale value of the trees, the treble damage clause must necessarily be respected. There is nothing yet in the case to impugn it. The following statement from *Philadelphia Dairy Products Company, Inc. v. Polin,* 147 Pa. Superior Ct. 26, 32, 23 A. 2d 221, is presently pertinent: ". . . there is nothing on the face of the contract nor is there any testimony in the record to show, by way of contradiction, that the sum so fixed was unconscionable or disproportionate to the net loss that would probably result from failure to complete performance of the contract. See Kunkel & Jordan v. Wherry, 189 Pa. 198, 42 A. 112."

In *Stockwell v. United States,* 80 U. S. 531, 547, an action in debt was brought to recover double the value of certain goods which had been illegally purchased. The United States sought a civil recovery pur-

suant to a statute providing for the recovery of double the value of goods purchased by one who knows they were illegally imported into the country. Mr. Justice STRONG, speaking for the Court, stated: "The act of abstracting goods illegally imported, receiving, concealing, or buying them, interposes difficulties in the way of a government seizure, and impairs, therefore, the value of the government right. It is, then, hardly accurate to say that the only loss the government can sustain from concealing the goods liable to seizure is their single value, or to assert that the liability imposed by the statute of double the value is arbitrary and without reference to indemnification. Double the value may not be more than complete indemnity. There are many cases in which a party injured is allowed to recover in a civil action double or treble damages. Suits for infringement of patents are instances, and in some States a plaintiff recovers double damages for cutting timber upon his land. It will hardly be claimed that these are penal actions, requiring the application of different rules of evidence from those that prevail in other actions for indemnity."

In *Overnight Motor Co. v. Missel*, 316 U. S. 572, 583-584, an action, pursuant to the Fair Labor Standards Act, was brought by an employee to recover his "unpaid minimum wages or [his] unpaid overtime compensation, as the case may be, and . . . an additional equal amount as liquidated damages." In upholding a right of recovery equal to double the amount of his lost wages, Mr. Justice REED, speaking for the Court, stated: "The liquidated damages for failure to pay the minimum wages . . . are compensation, not a penalty or punishment by the Government [Cases cited]. The retention of a workman's pay may well result in damages too obscure and difficult of proof for estimate other than by liquidated damages."

In *U. S. ex rel. Marcus v. Hess,* 317 U. S. 537, 549, 551-552, an action was brought to recover double damages against an individual who had presented certain fraudulent claims to the government. The Court there recognized,—"We cannot say that the remedy now before us requiring payment of a lump sum and double damages will do more than afford the government complete indemnity for the injuries done it . . . . We think the chief purpose of the statutes here was to provide for restitution to the government of money taken from it by fraud, and that the device of double damages plus a specific sum was chosen to make sure that the government would be made completely whole."

Damages for the wrongful conversion of trees has long been recognized in the law as justifying double or treble damages solely as compensation and not as a penalty. Section 3 of the Act of March 27, 1824, 8 Sm. L. 282, provided "That in all cases where any person . . . shall cut down or fell . . . any timber tree or trees, growing upon the lands of another, without the consent of the owner thereof, he . . . shall be liable to pay to such owner double the value of such tree or trees, so cut down or felled; or in case of the conversion thereof to the use of such offender or offenders, treble the value thereof, to be recovered with costs of suit, by action of trespass or trover, as the case may be; and no prosecution by indictment shall be any bar to such action." The concluding proviso was obviously inserted for the reason that by Section 1 of the same Act the cutting down or felling of trees by anyone "knowing the same to be growing upon the lands of another person, without the consent of the owner . . ." was made a misdemeanor subjecting the offender upon conviction to the payment of the costs of prosecution and such fine as the court in its discretion might think proper to inflict. Thus, the same statute provided for

the penal liability of the offender for the crime and for his civil responsibility to the owner of the trees for the tort. The double or treble damages, as the case might be, were meant to be compensatory to the owner because of the possible extent of the indeterminable injury through the loss of trees beyond what might be appraised as their sale or market value. That actions to recover double or treble amounts under statutes of the type of the Forest Tree Seedling Act are not penal, see *Chattanooga Foundry v. Atlanta,* 203 U. S. 390, 397, and cases there cited.

But assuming, *arguendo,* that the treble damages recoverable by the Commonwealth under the contracts with the defendants for their breaches constitute a penalty and, as such, a forfeiture under a penal statute and that, consequently, an action therefor is barred by the Act of 1785, more than a year from the commission of the alleged wrongs having elapsed, still, there is absolutely no basis for concluding that the remedy provided by the contracts was to be exclusive of any and all other legal remedies that the Commonwealth might have for appropriate redress. It follows, therefore, that the Commonwealth's action in trespass for damages for the defendants' alleged conspiracy is maintainable on the basis of the averments of the complaint.

There is nothing in the record from which it could be concluded that the Commonwealth elected to proceed on the theory of a civil conspiracy and to seek the treble damages *imposed by the terms of the statute* or that it attempts to engraft the damages *imposed by the statute* on the tort action of civil conspiracy. The treble damages which the Commonwealth seeks are not by virtue of the statute but as being the appropriate measure of damages for the type of tort in suit. In short, whether treble damages is the proper measure

under the facts of this case will be a matter for the trial judge to rule upon when all of the evidence in respect of the injury suffered by the Commonwealth has been put in. Indeed, it is permissible for the court to treble the damages after the jury's verdict has been returned if the facts warrant it and if it clearly appears that single damages only were awarded by the jury: *Robbins v. Farwell*, 193 Pa. 37, 44 A. 260. Even if the Commonwealth is not entitled to treble damages, the fact that it presently so claims would furnish no ground for dismissing the complaint on preliminary objections.

In *Scranton Axle & Spring Co. v. Scranton Board of Trade*, 271 Pa. 6, 9-10, 113 A. 838, we said that "Where, as here, a plaintiff's statement makes a prima facie case, he cannot be turned out of court on demurrer thereto, even though he may claim more damages than he will ultimately be entitled to recover." With that statement, the defendant's motion for judgment based on questions of law raised by his affidavit of defense was dismissed. In *Suraci v. Ball*, 160 Pa. Superior Ct. 349, 354, 51 A. 2d 404, it was recognized that "Questions relating to . . . damages, discussed by the court below, cannot be decided upon an affidavit of defense raising questions of law [cases cited]." In *Drabant v. Cure*, 274 Pa. 180, 185, 118 A. 30, the court, finding that the plaintiff had stated a good cause of action, overruled a defendant's affidavit of defense ". . . since it is clear plaintiff is entitled to recover some damages, a determination of the amount thereof not being required in this stage of the case." Where a plaintiff has stated a good cause of action he is at least entitled to nominal damages: *Freedom Oil Works Co. v. Williams*, 302 Pa. 51, 56, 152 A. 741. In *Eckman v. Lehigh & Wilkes-Barre Coal Company*, 50 Pa. Superior Ct. 427, 434, the court correctly stated that

"... assuming, for the sake of argument only, that the evidence was insufficient, it by no means follows that the defendant was entitled to binding direction. Evidence had been given of a tortious injury committed by it, and, at least, the plaintiff was entitled to recover nominal damages. Where a legal right has been invaded, and substantial damages claimed, the extent of which cannot be ascertained with certainty, nominal damages may be recovered."

Since the Commonwealth is seeking by this action in trespass to recover appropriate damages for the injury suffered through the alleged conspiracy of the defendants to defraud it, the statute of limitations on trespass actions for tort can have no applicability. It has long since been established that the statute of limitations does not run against a sovereign in a civil proceeding: *Bagley v. Wallace,* 16 S. & R. 245, 250. As stated in *Frey's Estate,* 342 Pa. 351, 353, 21 A. 2d 23, "Statutes of limitation do not apply to [the Commonwealth], because the maxim *nullum tempus occurrit regi* though probably in its origin a part of royal prerogative has been adopted in our jurisprudence as a matter of important public policy."

Judgment reversed with leave to the defendants to answer within twenty days of the remand of the record, the plaintiff's motions for discovery to be reinstated and reconsidered.

Mr. Justice COHEN took no part in the consideration or decision of this case.

---

DISSENTING OPINION BY MR. JUSTICE BELL:

On February 8, 1956, the Commonwealth instituted the present action seeking to recover over $490,000., representing three times the so-called "sale value" of seedlings and transplants purchased by a number of the defendants from time to time during the period

*1937* to 1950. The Commonwealth's action, which charged "a conspiracy to defraud the Commonwealth", was clearly and unquestionably based upon the Forest Tree Seedling Act of May 5, 1927, P. L. 817, as amended 32 P.S. §453. That Act provided for the sale by the Department of Forests and Waters of forest tree seedlings and transplants to persons desiring to plant them. Section 2 required the buyer to agree "that if such trees . . . are sold . . ." the buyer would become liable to the Commonwealth "for the payment of a *penalty** equal to three times the sale value of the trees . . . sold".

The law has for centuries recognized that it is wise and necessary for the welfare and repose of society that every person should be secure from claims and actions (even criminal actions, except murder) unless they are made or brought within a reasonable time. For his own self-protection, it is clear from the majority opinion, that a person must keep records and documentary evidence of transactions and (small) sales for 20 years, and as against the Commonwealth,** for 100 years. It seems to me that a construction of an Act which requires such a result is so unreasonable, impractical and unrealistic as to be absurd. *What is the use of having Statutes of Limitations?* What is the use of having an applicable Statute of Limitations, if it can be avoided and nullified merely by charging that a conspiracy existed 20 years ago and then prove it only, if at all, by pretrial discovery of defendants' records (if they are still in existence)?

Moreover, if the Commonwealth's charges are true, defendants are guilty of the *crime* of conspiracy.

---

* Italics throughout, ours.

** I thoroughly disagree with the philosophy that our Commonwealth continues to have all the immunities which were anciently attached to a Royal Sovereign.

When this Court grants the Commonwealth in a civil case a right to pretrial discovery of defendants' records, which will disclose what is both a civil and a criminal conspiracy, the cases hold that this is *equivalent* to compelling a defendant to be "a witness against himself in a criminal case" in violation of the Fifth Amendment of the Constitution of the United States, and an unreasonable search and seizure in violation of the Fourth Amendment.

In *Boyd v. United States,* 116 U. S. 616, where the question involved was whether in a *civil* action for forfeiture, based on fraud committed against public revenue, a defendant could be compelled to produce his papers, the Court, in its opinion, said (pages 631-632, 634-635) : "Now it is elementary knowledge, that one cardinal rule of the court of chancery is *never to decree a discovery which might tend to convict the party of a crime,* or to forfeit his property. And any compulsory discovery by extorting the party's oath, or compelling the production of his private books and papers, to convict him of crime, or to forfeit his property, is contrary to the principles of a free government. It is abhorrent to the instincts of an Englishman; it is abhorrent to the instincts of an American. It may suit the purposes of despotic power, but it cannot abide the pure atmosphere of political liberty and personal freedom . . . . If the government prosecutor elects to waive an indictment, and to file a civil information against the claimants—that is, civil in form—can he by this device take from the proceeding its criminal aspect and deprive the claimants of their immunities as citizens, and extort from them a production of their private papers, or, as an alternative, a confession of guilt? This cannot be. . . . As, therefore, suits *for penalties* and forfeitures incurred by the commission of offences against the law, are of this

quasi-criminal nature, we think that they are within the reason of criminal proceedings for all the purposes of the Fourth Amendment of the Constitution, and of that portion of the Fifth Amendment which declares that no person shall be compelled in any criminal case to be a witness against himself; and we are further of opinion that a compulsory production of the private books and papers of the owner of goods sought to be forfeited in such a suit is compelling him to be a witness against himself, within the meaning of the Fifth Amendment to the Constitution, and is the equivalent of a search and seizure—and an unreasonable search and seizure—within the meaning of the Fourth Amendment."

*Boyd v. United States* has been cited with approval by the Supreme Court of the United States in 73 cases and the language of the opinion, commencing with the words "As, therefore, suits for penalties . . ." has been quoted with approval in *United States v. Zucker,* 161 U. S. 475, 479-480 and in *Stone v. United States,* 167 U. S. 178, 187.

In *Osborn v. First National Bank of Athens,* 154 Pa. 134, 26 A. 289, there was an action of assumpsit to recover from the bank, as provided by an Act of Congress, twice the amount of usurious interest paid. This Court held (pages 136, 137) : "That the sums sought to be recovered are penalties, pure and simple, cannot be doubted, . . . . 'The plaintiff's claim . . . arises from the defendant's violation of a statute, remedial and penal, which gives the borrower the right to recover back from the bank twice the amount of illegal interest paid, for the twofold purpose of compensation and example, the recovery being a recompense to the one and a punishment of the other.'

"In the case of Boyle v. Smithman, 146 Pa. 255, we held that in an action to recover penalties under a

statute, the defendant can neither be compelled to testify against himself, nor to produce his books to be used as evidence against him."

In *Corry v. The Pennsylvania Railroad Company,* 194 Pa. 516, the Court approved *Osborn v. First National Bank,* 154 Pa., supra, and said (pages 519-520): ". . . we held that no affidavit of defense could be required in an action of debt to recover a penalty, for the double reason that it was substantially an action ex delicto, and that being an action to recover penalties, the defendant cannot be required to furnish evidence against himself."

As Judge WALTER R. SOHN (speaking for the lower Court), in an able, comprehensive opinion, convincingly said: "One of the earliest American cases to be found on the subject of discovery is that of U. S. v. The Saline Bank of Virginia, 1 Peters 100 (1828), in which Chief Justice MARSHALL said: 'This is a bill in equity for a discovery and relief. The defendants set up a plea in bar, alleging that the discovery would subject them to *penalties** under the statute of Virginia.

"'The court below decided in favor of the validity of the plea, and dismissed the bill.

" 'It is apparent that, in every step of the suit, the facts required to be discovered, in support of this suit, would expose the parties to danger. *The rule clearly is, that a party is not bound to make any discovery which would expose him to penalties, and this case falls within it.'*

"This rule enunciated in the Saline Bank case takes root in the constitutional protection against self-incrimination. It is, however, by no means restricted

---

* For violation of a provision of the banking laws of Virginia.

to cases where a defendant either has been, or is likely to be, indicted for a criminal offense.

". . . as late as 1950, our Superior Court invoked the rule and recognized that it applied to civil suits for the recovery of penalties as well as to purely statutory actions. In Commonwealth v. Rohanna, 167 Pa. Super. Ct. 338 (1950), Judge ARNOLD, now Mr. Justice ARNOLD of our Supreme Court, said: '. . . In a criminal or quasi-criminal proceeding, the defendant may not be called by the Commonwealth, as on cross-examination or otherwise, in violation of his constitutional privilege. It has even been held *in a proceeding to recover a statutory fine or penalty* that the defendant may take advantage of his constitutional privilege to refuse to give evidence against himself, and this though the action is brought on the *civil* side of the court: Philadelphia v. Cline et al., 158 Pa. Superior Ct. 179, 44 A. 2d 610; 328 U.S. 848. See also Commonwealth v. Tracey, 137 Pa. Superior Ct. 221, 8 A. 2d 622. . . .'

"In Dexter v. Walker & Lathrop, 7 Pa. Co. Ct. 274 (1889), we find a case which is most similar to the one at bar, even to the fact that it involved trees and so-called treble damages. The court there said: 'The action here is trover brought under the Act of March 20, 1824, to recover the penalty of treble damages for cutting and converting timber growing on lands the plaintiff claims to own. The pending application is for an order on the defendant to produce upon the trial certain books, etc., averred by the plaintiff to contain evidence pertinent to the issue. . . . As we have seen, the pending action is really to recover a penalty in damages. . . . Yet in Hare on Discovery, 131, we find that a discovery will *not* be ordered, "if the answer of the defendant might be evidence tending to subject him to punishment by any judicial or competent authority, or *to any penalty* or forfeiture." Then Story's

Equity, §1494: "Courts of equity will not entertain a bill for a discovery to aid the promotion or defence of a suit which is not purely of a civil nature. Thus, for example, they will not compel discovery in aid of a criminal prosecution *or a penal action.*" So, also, Brightly's Equity, §480. . . . But the case in hand is to recover the penalty of treble damages for cutting and converting the plaintiff's timber trees. In such a case, it would appear, *a discovery will not lie.* The reason for the rule excluding a discovery in actions of a penal character would seem to be in harmony with the policy of our criminal jurisprudence, which will not require the person charged to produce evidence against himself. . . .'

"In Ladenburg, Thalmann & Co. v. Pennsylvania Railroad Co., 6 D.R. 453 (1897), where discovery was sought of the defendant, a corporation, the court said: 'To the first rule there are two valid objections, the first being that as the action is for a penalty, the officers and employees of the defendant cannot be compelled to testify or produce its books at the trial . . . .

" 'The second objection is that the court will not permit a party to resort to this mode of proceeding for the purpose of fishing up a defence or making an attack upon the other party from its books and papers. . . .'

"A leading case on this subject is Boyle v. Smithman, 146 Pa. 255 (1891), where the plaintiff sued the defendant for a statutory penalty for failing to post certain statements respecting the operation of a pipe line business. In that case, the court said, at page 274: 'The second assignment is to the refusal of the court to compel the defendant to produce his books in court, so that they might be used as evidence against him on the trial. The act of 1878 is highly penal. This action is in form a penal action. Its object is to punish

the defendant for disobeying the direction of the statute, by imposing *penalties* amounting to about eighty thousand dollars. The defendant could not be compelled to testify against himself as a witness, and for the same reason *he cannot be compelled to aid in his own conviction by the production of his books and papers.* He had an unquestionable right to insist upon his privilege, and the court was bound to protect him in the enjoyment of it: Logan v. Railroad Co., 132 Pa. 403.' "

When a party sues under a statute it takes the favorable provisions of the statute cum onere. We agree with the Court below that the facts alleged in the Commonwealth's complaint are based, no matter how camouflaged, upon that statute, and that the action is *penal* in nature and is barred by the two year Statute of Limitations which is and has been the pertinent law of Pennsylvania since the Act of March 26, 1785, 2 Sm. L. 299, §6, 12 P.S. §44.

I would affirm the judgment of the lower Court which sustained defendants' preliminary objections.