**Stringfellow v. Stringfellow**

*Henry O. Heiser*, III, for plaintiff.
*Clayton R. Wilcox*, for defendant Rosenwald.
*Chester G. Schultz*, for defendant Stringfellow.

SPICER, *P.J.*, June 29, 1982—This action in trespass is an outgrowth of a custody fight. The parties to this action are all related to the child who was the subject of the custody case. Plaintiff is the father, defendant Sherry A. Stringfellow is the mother, and defendants Rosenwald are the child's maternal grandparents.

Although this action does not directly concern all of those relationships, we will, from time to time, refer to the parties as the father, mother, and grandparents, respectively. When we do so, we do not mean to indicate that we have lost sight of the fact that this is a lawsuit for damages and not a custody battle.

Plaintiff's complaint consists of 25 paragraphs and is brought against three defendants. It alleges facts from which plaintiff proceeds on theories of (1) intentional infliction of emotional distress (Restatement (Second) of Torts, §46), (2) tortious interference with custody (Restatement (Second) of Torts, §700), and (3) conspiracy to commit (2). The complaint is not separated into counts.

All defendants have filed preliminary objections in the nature of demurrers and motions to strike. None of these objections challenge the form of the

complaint. The only reason we have mentioned the form is to explain why we will not be dealing with separate counts in our discussion.

The child's parents separated in September, 1980. On October 1, 1980, they entered into a custody agreement by which the mother acquired permanent or general custody and the father partial or temporary custody. Some time after this, the parties further agreed to expand the father's custodial rights. Plaintiff alleges, in paragraph eight, that the effect of this later agreement was that "custody of the minor child was about divided between the parents, which fact was known to defendants Rosenwald."

In March, 1981, the mother notified plaintiff that she desired to move to West Germany. She suggested a new arrangement by which the child would be shared by each of the parties six months of the year. Plaintiff rejected this proposal and suggested that a custody action be instituted to resolve the impasse. The mother thereafter filed a petition for custody in this court. This action was filed to 81-S-206 and the complaint incorporates those proceedings by reference.

Pursuant to our local practice, we held a preliminary conference in the custody action of April 29, 1981. It appeared at the conference that general custody was disputed. A hearing was scheduled for July 1, 1981.

The mother requested another conference for the purpose of discussing means of gathering information. The second conference was held May 19, 1981, and the court authorized the taking of depositions of an Army Chaplain in West Germany relating to housing, recreational facilities, child care services, medical services, educational opportunities, and the like.

On June 23, 1981, counsel exchanged names of potential witnesses for the July 1, 1981, hearing.

It can be assumed that matters were progressing smoothly at this point. The parents had a chance meeting with the child present at the Fireman's Carnival in Fairfield on June 27, 1981, and discussed the upcoming hearing and the father's temporary custody rights over the Fourth of July.

Shortly after this, the father received information that the mother planned on leaving with the child for West Germany prior to the hearing. He then, on July 29, 1981, filed a petition to enjoin the mother from removing the child from this jurisdiction. An order was entered but never served. The reason it was never served is that the mother flew to West Germany, taking the child with her, on the same date the order was entered.

Plaintiff alleges that the grandparents drove the mother and child to the airport and that the actions were done surreptitiously, without advance warning or notice, and without his knowledge or consent.

Neither the mother nor the child appeared at the July 1, 1981, hearing. Counsel for the mother appeared and tried unsuccessfully to withdraw the action. The hearing was then continued until August 6, 1981.

The mother's lawyer requested and was denied another continuance August 6, 1981. Testimony was presented by the father and his witnesses. The court then ordered that a transcript be prepared and filed and that the mother be given the opportunity to provide testimony by deposition no later than 60 days after the transcript was filed.

The next occurrence was a letter sent by the mother and received by the father October 15, 1981. Plaintiff alleges that this was the first infor-

mation provided him concerning the child's whereabouts and welfare.

The mother did not provide depositional testimony. Therefore, another hearing was scheduled for December 16, 1981. At the mother's request this hearing was continued until January 15, 1982. The mother was directed to personally appear and produce the child at this hearing. A request for a further continuance made by the mother January 13, 1982, was denied. The hearing was held as scheduled January 15, 1982, without the presence of either the mother or the child. The court then awarded temporary custody of the child to the father and scheduled another hearing for April 8, 1982.

When the mother failed to turn custody temporarily over to the father, the court, on the father's petition, adjudicated the mother to be in contempt of court on February 15, 1982.

The mother appeared with the child in April and a hearing was held both on the matter of contempt and the matter of custody. Custody of the child was awarded jointly to the parents.

Plaintiff's action against the grandparents is based mainly upon conspiracy. He alleges that the mother and the grandparents conspired to deprive him of his rights to have custody adjudicated by the court at a hearing and to interfere with his temporary custody rights and parental relationship with his daughter. He does not say that defendants conspired to inflict emotional distress. The paragraphs which are pertinent to the conspiracy theory can be summarized as follows:

19. The grandparents drove the mother and the child to the airport.

20. The removal of the child from the jurisdiction was surreptitious.

21. Defendants conspired as summarized earlier.

23. The grandparents did not provide plaintiff with information they had concerning the whereabouts and welfare of the child.

25. The actions by defendants were done "with the intention of disrupting his father-daughter relationship with the child, the exercise of his temporary custody rights, and for the purpose of inflicting severe mental and emotional distress and anxiety upon plaintiff. . . . "

Other paragraphs allege actions by the mother which plaintiff claims were wrongful. The complaint demanded damages "in excess of $350,000" but plaintiff agrees that this properly should have stated "in excess of $10,000."

With this background in mind, we will now discuss the objections filed by defendants. We begin by considering the demurrers.

1. Intentional infliction of emotional distress:

It is now settled that Pennsylvania recognizes a right of action based upon the Restatement (Second) of Torts, §46: Banyas v. Lower Bucks Hospital, Pa. Super. 437 A. 2d 1236 (1981); Fair v. Negley, 257 Pa. Super. 50, 390 A. 2d 240 (1978).

The section provides, in part:

One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Defendants argue that the right of action recognized by the section should not be extended to child custody cases. Plaintiff, on the other hand, points to considerable authority indicating strong disapproval for child snatching and urges the court to recognize the cause of action.

There are certainly reasons for the positions of all parties. We might well hesitate to add more fuel to the litigious fires that rage in this area. All too often, suits and rumors of suits are but cudgels with which one former spouse punishes the other. Domestic litigation is perhaps the least civilized of court actions and many parents use professed love for a child as an excuse to disrupt the tranquility of other parents.

Still, it cannot be denied that wounds inflicted by unilateral and extra legal custodial actions are extremely painful. Section 46 does not limit its application to non-custodial settings and the comments establish safeguards and guidelines which would prevent recovery for trivial transgressions.

The foregoing comment may be unnecessary in light of the excellent opinion by Judge Keller in Bland v. Bland, 50 D. & C. 2d 44 (1970). He upheld a right of recovery based on section 46 in a custody interference case. His scholarly lead was followed in Cahalin v. Rebert, 10 D. & C. 3rd 142 (1979). We, too, join the ranks of concurrence.

The question remains whether the actions by defendants are serious enough to warrant this action. Subsection j provides, in part, "It is only where it is extreme that the liability arises." It is further provided:

"h. Court and jury. It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.

The actions of the grandparents cannot, in our

opinion, rise (or fall) to the level upon which liability can be asserted. Their sole involvement, as has been pointed out, was to have driven their daughter to the airport and to have failed to notify plaintiff.

There are cases, and Bland v. Bland, supra, is one such case, which hold grandparents liable for aid given in custody interference cases. These cases, for the most part, deal in true examples of child snatching. That is not the case here.

Plaintiff has not alleged that he asked the grandparents for information. He merely alleges that they refused to give such information. Under all allegations, it can be fairly inferred that plaintiff knew that the mother had carried through with her intentions of moving to West Germany.

We do not find that the grandparents' involvement in this particular case justified liability being asserted against them. We note that plaintiff has not alleged a conspiracy to inflict emotional distress. There is, therefore, no issue of vicarious liability for infliction of emotional distress. Liability must be determined by the actions of the grandparents alone.

It is our further opinion that the complaint does state an action against the mother. Certainly, reasonable persons could differ whether her actions could be considered extreme.

The demurrer by defendant Sherry A. Stringfellow to the cause of action based upon section 46 is overruled. The demurrer by defendants Robert B. Rosenwald and Regina E. Rosenwald to the cause of action based upon section 46 is granted.

2. Tortious interference with custody:

Defendants contend that a cause of action cannot arise under section 700 of the Restatement (Second) of Torts, when primary custody was not being exercised by plaintiff. Plaintiff counters by assert-

ing that the restatement contemplates interference with custody rights as well as custody. He points to the fact that he had custody rights and would have us conclude that he has a right of action for defendants' interference with those rights.

Section 700 provides:

One who, with knowledge that the parent does not consent, abducts or otherwise compels or induces a minor child to leave a parent legally entitled to its custody or not to return to the parent after it has been left him, is subject to liability to the parent.

Comment c to the section makes it clear that the section does not apply to situations akin to those present here. It is stated in the comment:

c. *When both parents are entitled to custody and earnings*. When the parents are by law jointly entitled to the custody and earnings of the child, no action can be brought against one of the parents who abducts or induces the child to leave the other.

The demurrers to this cause of action are sustained.

3. Conspiracy:

The general requirements for a cause of action in conspiracy are discussed by Justice Spaeth in his opinion in Baker v. Rangos, 229 Pa. Super. 333, 324 A. 2d 498 (1974). The opinion states the following:

"[A] civil conspiracy is a combination of two or more persons to do an unlawful or criminal act or to do a lawful act by unlawful means or for an unlawful purpose: Fife v. Great Atlantic and Pacific Tea Co., 356 Pa. 265, 52 A. 2d 24 (1947); Bausbach v. Reiff, 244 Pa. 559, 91 Atl. 224 (1914)." Landau v. Western Pennsylvania National Bank, supra at 224, 282 A. 2d at 339. A conspiracy becomes ac-

tionable when some overt act is done in pursuance of the common purpose or design held by the conspirators, Wildee v. McKee, 111 Pa. 335, 2A. 108, (1886), and actual legal damage results, Laverty v. Varrarsdale, 65 Pa. 507 (1870); Rosenblum v. Rosenblum, 320 Pa. 103, 181 A. 583 (1935).

It follows from this definition that a complaint must allege facts showing the existence of all of the elements indicated. However, to prove a conspiracy, a plaintiff is "not required to present direct and positive testimony of a collusive agreement to do something unlawful. The nature of the crime attempted usually makes it susceptible of no other proof than by circumstantial evidence." Kaiser v. Ins. Co. of North America, 274 Pa. 239, 243, 117 A. 791, 792 (1922). " 'When [a] plaintiff . . . relies on subsequent acts to establish the conspiracy, these acts must be such as to clearly indicate the prior collusive combination . . . , not slight circumstances of suspicion, and these subsequent acts must be such as to warrant the belief and justify the conclusion that the subsequent acts were done in furtherance of the unlawful combination. . . . ' " Novic v. Fenics, 337 Pa. 529, 535, 11 A. 2d 871, 874 (1940). Thus, if a plaintiff is unable to allege facts that are direct evidence of the combination and its intent, he must in order to comply with Rule 1019(a) allege facts that if proved will support an inference of the combination and its intent: Id. at 351, 329 A. 2d at 506.

Pleading requirements under Pa.R.C.P. 1019 are no more stringent than in other causes of action. It is only necessary that the complaint allege the material facts upon which plaintiff must rely:

Allegations will withstand challenge under 1019(a) if (1) they contain averments of all of the

facts the plaintiff will eventually have to prove in order to recover, 1 Goodrich-Amram, Procedural Rules Service §1019(a)-2; D'Antona v. Hampton Grinding Wheel Co., 225 Pa. Super. 120, 310 A. 2d 307 (1973), and (2) they are "sufficiently specific so as to enable defendant to prepare his defense," Commonwealth Environmental Pollution Strike Force v. Jeannette, 9 Pa. Commw. 306, 308, 305 A. 2d 774, 776 (1973) (footnotes omitted): Id. at 350, 324 A. 2d at 505-507.

If a conspiracy is proven, the conspirators are liable for torts committed pursuant to the conspiracy: Cahalin v. Rebert, supra, 7 P.L.E. Conspiracy §26.

We have already held that the tort of interference with custody will not lie in this case. It follows that conspiracy to commit that tort is also not actionable unless there are allegations that the alleged conspirators were to employ unlawful means to achieve a lawful result: 7 P.L.E. Conspiracy §12. There are no such allegations.

The demurrer to conspiracy is sustained.

4. Motion to strike:

Defendants move to strike requests for damages which are based on expenditure of counsel fees in the custody action and the word "abduct," which was used to describe defendants' actions in taking the child to West Germany.

Normally, the costs of litigating a cause of action incurred through lawyers' fees are not recoverable. There must be some specific authority, either by statute or otherwise, for such recovery. Suing later for consequential damages and labelling counsel fees as such does not expand such right of recovery: Joseph A. Myers Real Estate, Inc. v. Slaybaugh, 23 Adams 5 (1981).

Counsel fees expended in the custody case are not recoverable in this action: Bland v. Bland, supra.

We again agree with Judge Keller, this time in his characterizing the word "abduct" as being scandalous. The question is whether the facts alleged in the complaint justify its use.

The connotations of the word may differ: 1 Words and Phrases, Abduction, page 172 et seq. Still, we think the general connotation is one of force: 1 C.J.S., page 281. There are no allegations that force, coercion, or undue influence were used upon this child. The child was in the physical and general custody of the mother when removed from the jurisdiction. The use of the word "abduct" is inappropriate.

Perhaps it is not a matter of great importance. However, if we allow the word in the pleadings, we would feel constrained to allow use of the word at trial. We feel this might be inflammatory.

The motions to strike are granted as per the attached order.

## ORDER

And now, June 29, 1982, the demurrer by defendant Sherry A. Stringfellow to the cause of action based upon intentional infliction of emotional distress is denied. All other demurrers are sustained. The motions to strike are granted in that (1) the demand for damages shall read "in excess of $10,000, (2) damages based upon counsel fees expended in the custody case are stricken, and (3) the word "abduct" is stricken.

Plaintiff shall have the right to file an amended complaint within 20 days of this date. If no such amended complaint is filed, defendant Sherry A.

Stringfellow shall file an answer to the complaint, as affected by this order, within 40 days of today's date.